## Johnny Lee HILL *v.* STATE of Arkansas

CR  84-149                                    685 S.W.2d 495

Supreme Court of Arkansas
Opinion delivered February 25, 1985

*Gregory E. Bryant,* for appellant.

*Steve Clark,* Att'y Gen., by: *Alice Ann Burns,* Deputy Att'y Gen., for appellee.

STEELE HAYS, Judge. The appellant was charged and convicted on two counts of rape, two counts of aggravated robbery and two counts of kidnapping. He was convicted by a jury and received a total of 135 years. The appellant raises three issues on appeal, none of which have merit.

The charges stemmed from a criminal episode that occurred sometime shortly after midnight on August 15 1981. The three female victims were accosted at gunpoint by two men as they were getting out of their car in a parking lot near a Little Rock nightclub. The two men, one holding a gun, the other a knife, robbed them of their purses and jewelry. The victims were then abducted and forced to drive to an isolated field where the assailant who had been holding the gun, forced them to engage in sex with them.

The robbery was reported immediately, but the victims said nothing about the rapes, attributing their reluctance to the fact that one of them was getting married the next day. When the appellant was picked up approximately a year later, they decided to pursue prosecution of the sexual assault.

Appellant first argues the trial court erred by not declaring a mistrial after the defendant was seen by members of the jury while wearing handcuffs. On returning from a lunch break, the bailiff and the appellant, who was handcuffed, were allegedly seen by some of the jurors as they passed through the corridor. Appellant requested a mistrial which was denied.

We have held it is not prejudicial per se when the defendant is brought into a courtroom handcuffed. *Johnson v. State,* 261 Ark. 183, 546 S.W.2d 719 (1977). In *Johnson,* we found the appellant was charged with being an escapee from the penitentiary, was an inmate at the time of trial and all of this would become known to the jury during the trial. Citing *Gregory* v. *United States,* 365 F.2d 203 (8th Cir. 1966), we said we would not presume prejudice when there was nothing in the record to indicate what impression may have been made on the jurors and where the appellant did not offer any proof of prejudice. In a more recent 8th Circuit decision, *United States* v. *Carr,* 647 F.2d 867 (1981), the 8th Circuit defendant was allegedly seen by several members of the jury panel while in handcuffs and a waist chain before trial. The court said, "a brief and inadvertent exposure of defendants to jurors is not inherently prejudicial. The defendant must bear the burden of affirmatively demonstrating prejudice." The court said the defendant's allegation that several prospective jurors "likely" saw him was an unsubstantiated allegation and did not satisfy his burden of affirmatively showing he was prejudiced. The court said he did not ask for a hearing or offer to prove the prejudicial effect of the encounter. Under these circumstances the court was not willing to presume any prejudice.

In this case, from the record of the in-chambers conference on the mistrial motion, it is not evident there was

anything but a brief, inadvertent sighting by some of the jurors. The appellant offered no proof of any jurors having actually seen the appellant, nor was any voir dire requested to substantiate any allegation of prejudice. There was no affirmative showing of prejudice by the appellant. There was no alternative route to the courtroom from the lock-up area that was not visible to the public; the defense attorney had already told the jury that the defendant had been and was currently incarcerated; the bailiff testified he continued on with the appellant because, he thought it would distract more if he pulled back after he once walked in and saw the jurors; the bailiff was instructed to avoid the error in the future; and most significantly, the bailiff testified the appellant had attempted earlier to get out of the holding cell and for security reasons the bailiff felt it was necessary to handcuff him.

Appellant next submits prejudicial error occurred when the prosecutor commented on his failure to deny his guilt. Appellant took the stand in his behalf and on direct was questioned about how he happened to be brought up on the charges for this trial. He said he had been picked up by the police in Oklahoma, was told he was wanted for these charges in Arkansas, did not know anything about the rapes or robberies at that time, was extradited back to Arkansas and came back willingly. On cross, the prosecutor asked a series of questions about that testimony. Appellant admitted he knew he was wanted in Arkansas for these charges before he was picked up in Oklahoma. The following exchange took place:

Q. And when you got down to the [Little Rock] Police Department that's the first time you found out what all this was about, why they wanted you?

A. No, that wasn't the first time I found out.

Q. When did you first find out?

A. I found out when I was up in Lawton, Oklahoma but I didn't have no money to come back and I said I wasn't going to hide, wasn't going to give no false ID or

nothing. Whenever they stopped me that's when I'm coming back to face this.

Q. So you knew about it before you got picked up, right?

A. Yes, I did.

Q. And the reason you didn't try to clear it up was because you didn't have any money?

A. 'Cause I didn't have no money to come back on. 'Cause I knew I hadn't done these charges.

Q. Did you ever go to any local authorities up there and tell them about it?

A. No, I did not.

Q. Did you call back down here and tell the police where you were?

A. No, I did not.

Q. You didn't think they would have come and gotten you and helped you get back down here?

A. I didn't have no idea.

Q. Okay, But you knew about it and didn't say anything?

DEFENSE: Your honor, I'm going to object to that question I believe Mr. Hill has the right to remain silent.

We need not decide whether this line of questioning is proper under the "tacit admission" rule [see McCormick Evidence § 161 (2nd ed. 1972)] as the appellant is precluded from raising the argument. The question appellant objected to had already been asked in various forms without an objection. Failure to object at the first opportunity to do so

waives any right to raise the point on appeal. *Earl* v. *State,* 272 Ark. 5, 612 S.W.2d 98 (1981). Additionally, once the appellant takes the stand he has waived his right not to be a witness against himself and is subject to cross-examination, as any other witness. *Horne* v. *State,* 253 Ark. 1096, 490 S.W.2d 806 (1973) (cross-examination about appellant's refusal to make statements or admissions to the sheriff); *Spillers* v. *State,* 268 Ark. 217, 595 S.W.2d 650 (1980). Here, the appellant had raised the subject on direct, hence, this was a proper line of questioning by the state. Ark. Unif. R. Evid. 611(b).

As a final point, appellant argues the testimony was insufficient to sustain a verdict of guilt. By the victim's account three individuals were involved in the episode. The argument goes only to the identity of the appellant as being the one of the three who committed the rapes, or in any case to sufficient proof of his involvment in the incidents at all.

The strongest evidence adduced at trial was from Anthony Pike, an accomplice, and two of the victims. It is the rule that a felony conviction cannot be had on an accomplice's testimony alone, it must be corroborated by other evidence tending to connect the defendant with the commission of the offense. Ark. Stat. Ann. § 43-2116; *Bennett* v. *State,* 284 Ark. 87, 679 S.W.2d 202 (1984). We said in *Bennett,* "The corroborating evidence need not be sufficient in and of itself to sustain a conviction, but it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime." On appeal the evidence will be viewed in the light most favorable to the appellee and the verdict will be affirmed if there is substantial evidence to support it. The evidence is substantial if the jury could have reached its conclusion without having to resort to speculation or conjecture. *Heard* v. *State,* 284 Ark. 457, 683 S.W.2d 232 (1985); *Boone* v. *State,* 282 Ark. 274, 668 S.W.2d 217 (1984). We need only consider testimony lending support to the jury verdict and disregard any testimony that could have been rejected by the jury on the basis of credibility. *Chaviers* v. *State,* 267 Ark. 6, 588 S.W.2d 434 (1979). As to any individual witness, the jury may accept or reject any or all of a witness' testimony.

*Bennett, supra, Hamilton* v. *State,* 262 Ark. 366, 556 S.W.2d 884 (1974).

There was substantial evidence in this case to corroborate the accomplice's testimony. Two of the victims testified and stated they had positively identified the appellant. Four days after the rape, one of the victims identified Dale Hayes, another accomplice, in a picture lineup, as the man with the gun, and at the same time tentatively identified the appellant. A few days later the same victim identified Hayes and Pike from an actual lineup. A year later she identified appellant in a physical lineup as one of the three, the one with the gun. She testified that after the lineup, she reconsidered her earlier identification by picture only. She said, "After seeing all three of them physically there was no doubt in my mind. . . There's no doubt in my mind. He is the one."

The other victim who had made no earlier identification viewed a physical lineup a year later and positively identified appellant. She said she remembered the gunman because his eyes "kind of bug out." The appellant said he was known as "Popeye" because of his eyes.

These two victims testified the parking lot was well lighted, the light was on in the car during the robbery, and there was a full moon.

The appellant's defense was that he knew nothing of the crimes and had spent the evening and night with his girlfriend. However, in addition to the victims' testimony, a mutual friend of the appellant and Pike testified that on the night of the episode he had loaned his car to Pike around midnight and sometime after two in the morning Pike returned the car in the company of appellant and Hayes.

There was also testimony of one of the police officers working on the case that one of the victim's purse was recovered from a drainage ditch beside appellant's residence.

Affirmed.