Clarence GILLIE *v.* STATE of Arkansas

CR 90-259                                                    808 S.W.2d 320

Supreme Court of Arkansas
Opinion delivered April 29, 1991

298

*Thomas G. Montgomery*, Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. On March 28, 1990, the appellant, Clarence Gillie, was convicted of capital murder and aggravated robbery and sentenced as an habitual offender, respectively, to life without parole and 50 years in the Arkansas Department of Correction, the terms to be served consecutively.

Gillie asserts ten points of error on appeal, none of which have merit, and we affirm.

## INSUFFICIENT EVIDENCE

We will initially address Gillie's point of error alleging that the evidence was insufficient to sustain a conviction for capital murder.

The underlying felony for Gillie's conviction of capital murder was robbery. Arkansas Code Ann. § 5-10-101(a)(1) (Supp. 1989) addressed the offense and provides in pertinent part as follows:

> (a)  A person commits capital murder if:

> (1)  Acting alone or with one (1) or more other persons, he commits or attempts to commit. . .robbery. . .and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; . . .

Gillie contends that there is no independent proof to indicate the underlying offense of robbery without resulting to speculation and conjecture.

To the contrary, the facts in this case show that on October 29, 1987, Wayne and Clovis Rogers, brothers, returned from Southland Greyhound Park to their room at the Twentieth Century Motel in West Memphis, Arkansas. Wayne testified that, while he was undressing and watching the evening news at approximately 10:05 p.m., there was a rapping at the door. Clovis went to the door and asked, "Who was it?" Wayne heard some mumbling, and Clovis unlatched the door. At that time, the person at the door said, "Open the door," at about the same time that he kicked in the door. Wayne saw a man at the door, and he jumped up and said, "Get out of here," as he realized that the man was breaking in on them. Wayne headed for the door, and the man fired two shots through the door opening and hit Clovis in the abdomen. Clovis subsequently died after 30 days in the hospital. Wayne made an in-court identification of Gillie as the man who had shot his brother.

Additionally, Thomas Gallagher testified that, at approximately 11:00 p.m. on the same evening of October 29, 1987, he was robbed at gunpoint in his room at the Holiday Inn Motel in

West Memphis, Arkansas, of a scuba watch and college ring by a man, who he later identified in court as Gillie, and a woman. During the course of the robbery, the motel manager and security guard were brought into Mr. Gallagher's room, and they also identified Gillie as the robber in in-court identifications.

Further, Mr. Gallagher testified that the watch discovered upon Gillie upon his arrest was identical to the watch taken from him in the robbery. Most importantly, slugs and shell casings recovered from the first crime scene and a live round of ammunition found at the second crime scene were traced by means of expert testimony to a .45 caliber pistol that was also taken from Gillie upon his arrest in the State of Mississippi.

■■ The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict. Substantial evidence must be forceful enough to compel a conclusion one way or another beyond suspicion and conjecture. On review, it is only necessary to ascertain that evidence which is most favorable to the appellee and, if there is substantial evidence to support the verdict, the finding must be affirmed. *Trotter* v. *State*, 290 Ark. 269, 719 S.W.2d 268 (1986) (citing *Williams* v. *State*, 281 Ark. 387, 663 S.W.2d 928 (1984)). Circumstantial evidence can provide the basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Trotter* v. *State, supra* (citing *Smith* v. *State*, 282 Ark. 535, 669 S.W.2d 201 (1984).

■ The intent or purpose to commit a crime is a state of mind which is not ordinarily capable of proof by direct evidence, so it must be inferred from the circumstances. *Trotter* v. *State, supra.* Additionally, A.R.E. 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of . . . intent, . . . plan, . . . identity. . . ."

■ Proof of the aggravated burglary was clearly admissible as being relevant to prove both Gillie's intent and plan, as well as his identity, in the commission of the first incident, although we have already shown that the circumstantial evidence was amply sufficient to connect Gillie with the first incident. *See Cassell* v. *State*, 273 Ark. 59, 616 S.W.2d 485 (1981). Reference to the

aggravated burglary was also allowable because it was so inter-twined factually with the case before us that exclusion of any reference to it would have been confusing to the jury or would have unnecessarily hampered the State's proof of the charged crime. *Evans* v. *State*, 287 Ark. 136, 697 S.W. 879 (1985).

■ Given the nature and sequence of events in this case, it is logical to infer Gillie's intent to rob the Rogers brothers at gunpoint in their hotel room from his actual commission of aggravated robbery of Mr. Gallagher in his hotel room within an hour of the first crime. Wayne Rogers identified Gillie as the man who attempted to force his way into the hotel room in which he and his brother, Clovis, were staying and testified that Gillie was armed with a .45 caliber pistol and fatally wounded Clovis when the latter resisted Gillie's entry; Gillie was also identified as the man who robbed Mr. Gallagher at another hotel at gunpoint within an hour of the first occurrence involving the Rogerses; and ballistics evidence connected the .45 caliber pistol found on Gillie at the time of arrest to both of the crime scenes. Entwining the facts of the two incidents, we find that there is substantial evidence to support the verdict.

## SPEEDY TRIAL

Gillie also argues that he was denied a speedy trial on the basis that he was not brought to trial within the twelve-month period provided by Ark. R. Crim. P. 28.1(c), as follows:

> Any defendant charged after October 1, 1987, in circuit court and held to bail, or otherwise lawfully set at liberty, . . . shall be entitled to have the charge dismissed with an absolute bar to prosecution if not brought to trial within twelve (12) months from the time provided in Rule 28.2, excluding only such periods of necessary delay as are authorized in Rule 28.3.

Arkansas R. Crim. P. 28.2 addresses when time commences to run and provides in pertinent part as follows:

> The time for trial shall commence running, without de-mand by the defendant, from the following dates:
>
> (a) from the date the charge is filed, except that if prior to that time the defendant has been continuously held in

custody or on bail or lawfully at liberty to answer for the same offense or an offense based on the same conduct or arising from the same criminal episode, then the time for trial shall commence running from the date of arrest;

*     *     *     *

Arkansas R. Crim. P. 28.3 addresses excluded periods and provides in pertinent part as follows:

The following periods shall be excluded in computing the time for trial:

*     *     *     *

(e) The period of delay resulting from the absence or unavailability of the defendant. A defendant shall be considered absent whenever his whereabouts are unknown. A defendant shall also be considered unavailable whenever his whereabouts are known but his presence for the trial cannot be obtained or he resists being returned to the state for trial.

In this case, Gillie was arrested in the State of Mississippi for an unrelated charge on November 23, 1987. The Governor of Mississippi signed Gillie's extradition order on January 16, 1989, and Gillie was returned to the State of Arkansas in January 1990. Gillie was subsequently tried in the Crittendon County Circuit Court on March 26, 1990. As a result, Gillie submits that he was available for trial in this state upon the signing of his extradition order, the delay in his being brought to trial is not excluded by the rules, and he is entitled to a complete prosecutorial bar.

However, we have stated in *Dukes* v. *State*, 271 Ark. 674, 609 S.W.2d 924 (1981) (citing *State* v. *Davidson*, 254 Ark. 172, 492 S.W.2d 246 (1973)), that an accused in prison in another state, for a different crime, must affirmatively request trial in order to activate the speedy trial rule. Gillie did not do so here, and his right to a speedy trial did not begin to run until his actual return to this state. Gillie's trial within three months of his return to Arkansas complies with his right to a speedy trial.

## STATE'S FILING OF CHARGE ON DAY OF TRIAL

Gillie contends that the trial court erred by permitting the state to file the charge of aggravated robbery against him on the day of trial. However, his reliance on *Harmon* v. *State*, 277 Ark. 265, 641 S.W.2d 21 (1982), is misplaced.

In *Harmon*, we stated that it was reversible error for the trial court to permit the prosecutor, on the first day of trial, to amend the charge of capital murder committed during the course of kidnapping to also include capital murder committed during the course of robbery in the absence of any notice to the defendant that he was to be required to defend an essentially different charge of capital murder.

Here, the initial information that the State filed against Gillie was "Capital Murder . . . while attempting or attempting to commit the felony crime of Robbery. . . ." On the day of trial, the State also charged Gillie with aggravated robbery with a firearm involving the second incident.

Gillie can hardly claim lack of notice under these circumstances because his counsel stated, ". . . I have been aware from the outset that this capital felony involved some actual basis entwined with this aggravated robbery."

To the contrary, Gillie did not claim that his opportunity to prepare a defense was inadequate, nor did he ask for a continuance on this basis. In fact, when asked by the trial court as to whether or not the defense was ready for trial, counsel stated "Defense is ready, your Honor."

■ Gillie has not shown that he was prejudiced by the delayed filing of the aggravated robbery charge. We will not reverse a conviction in the absence of a showing of prejudicial error. *See Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 434 (1984), *cert. denied*, 470 U.S. 1085 (1985).

## TRIAL OF BOTH CHARGES IN SAME TRIAL

Gillie next argues that the trial court erred by requiring him to stand trial on both the capital murder and aggravated robbery charges in the same trial.

Arkansas R. Crim. P. 21.1 addresses the joinder of offenses

and provides as follows:

> Two (2) or more offenses may be joined in one (1) information or indictment with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both:
>
> (a) are of the same or similar character, even if not part of a single scheme or plan; or
>
> (b) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

A trial court's decision to deny a motion for severance is a matter within the discretion of the trial court, and two or more criminal offenses are based ". . . on a series of acts connected together . . ." when the offenses occurred close together in time and place. *Brown* v. *State*, 304 Ark. 98, 800 S.W.2d 424 (1990).

In this case, the capital felony murder occurred on October 29, 1987, at 10:05 p.m. at the Twentieth Century Motel in West Memphis. The aggravated robbery occurred on October 29, 1987, at 11:00 p.m. at the Holiday Inn Motel in West Memphis.

Also, as stated in a previous point of error, the two offenses are factually intertwined in that slugs, shell casings, and a live round found at the crime scenes were traced by means of expert testimony to a .45 caliber pistol that was taken from Gillie upon his arrest in the State of Mississippi.

As a result, the trial court did not abuse its discretion in denying Gillie's motion to sever the offenses.

## GILLIE'S APPEARANCE IN JAIL CLOTHES AND SHACKLES TO JURY

Gillie asserts that he was prejudiced by appearing in jail clothes and shackles in the presence of the jury.

In response to Gillie's objection at trial, the trial court voir dired the jury members in order to determine if any of them had seen Gillie in shackles. Only one juror stated that she thought that she had seen Gillie wearing one handcuff. However, she further stated that there was nothing about the possibility that Gillie had on one handcuff that would prejudice her against him.

Again, Gillie has failed to show any prejudice from this alleged error. *See Hill* v. *State*, 285 Ark. 77, 685 S.W.2d 495 (1985).

## ABSENCE OF BLACK MALES ON JURY PANEL

Gillie also contends that he was prejudiced by the absence of black males on his jury panel.

However, Gillie has failed to place before us any evidence that shows that black males were systematically excluded from the venire or that the method used to assemble the venire (random picks from a current list of registered voters pursuant to Ark. Code Ann. §§ 16-32-103 to -105 (1987)) produced a venire from which black males were systematically excluded. *See Sanders* v. *State*, 300 Ark. 25, 776 S.W.2d 334 (1989).

## JURY INSTRUCTION ON MANSLAUGHTER

Next, Gillie argues that the trial court erred in refusing his requested jury instruction on manslaughter. He was charged with capital felony murder, and the trial court instructed the jury on that offense as well as first degree and second degree murder.

Since the jury had the opportunity to find Gillie guilty of murder charges that were less severe than capital felony murder but more severe than his requested instruction on manslaughter, the trial court's refusal to instruct the jury on manslaughter was, at most, harmless error. *Branscomb* v. *State*, 299 Ark. 482, 774 S.W.2d 426 (1989).

## CONVICTIONS USED IN HABITUAL OFFENDER STATUS

In his eighth point of error, Gillie claims that the trial court erred in allowing convictions subsequent to the offense for which he was tried to be used as enhancement of habitual offender status.

Gillie's reliance on *Washington* v. *State*, 273 Ark. 482, 621 S.W.2d 216 (1981), is misplaced in that Arkansas' habitual criminal statute was not designed to act as a deterrent but is a punitive statute that provides, in an appropriate case, that a prior conviction, regardless of the date of the crime, may be used

to increase punishment.

## CONTINUANCE

Gillie's contention that the trial court erred by denying his request for a continuance acknowledges the trial court's discretion in addressing the matter. Further, a trial court's denial of a motion for a continuance will not be reversed absent a clear abuse of discretion, *Butler* v. *State*, 303 Ark. 380, 797 S.W.2d 435 (1990), and the defendant has the burden of proof in showing the abuse of discretion. *David* v. *State*, 295 Ark. 131, 748 S.W.2d 117 (1988).

Gillie has not met his burden of proof, nor shown that he was prejudiced as a result of the denial of his continuance. In fact, Gillie merely made a motion for "a continuance for two weeks" after announcing he was ready for trial, without stating any reason for his motion.

## SUPPRESSION OF PISTOL OBTAINED WITHOUT A WARRANT

Finally, Gillie argues that the trial court erred by failing to suppress the pistol obtained without a warrant.

Although the grounds are unclear upon which the trial court based its denial of Gillie's objection at trial to the admissibility of the .45 caliber pistol, motions to suppress on the basis of an illegal seizure must be made no later than ten days before trial. *See Oglesby* v. *State*, 299 Ark. 403, 773 S.W.2d 443 (1989); Ark. R. Crim. P. 16.2(b). Rule 16.2(b) allows the trial court to entertain a motion at a later time only for good cause, which Gillie has failed to show in this case.

We may affirm the result reached by the trial court, if correct, even though the reason given by the trial court may have been wrong. *Grooms* v. *State*, 293 Ark. 358, 737 S.W.2d 648 (1987).

Affirmed.

NEWBERN and BROWN, JJ., concur in part and dissent in part.

ROBERT L. BROWN, Justice, concurring in part; dissenting in part. I agree with the majority on every aspect of its opinion save

one. The defendant was charged on the day of the trial with aggravated robbery which occurred the same night but at a different location from that of the capital felony murder. He was convicted of aggravated robbery and sentenced to a consecutive term of fifty years in addition to life without parole on the murder charge.

When the defense counsel discovered that the aggravated robbery charge had been filed, the jury had already been sworn. This colloquy then took place before the trial court:

> Defense Counsel: Your Honor, I am not going to say that I was unaware of the allegations of aggravated robbery. In fact, I have been aware from the outset that this capital felony involved some actual basis entwined with this aggravated robbery. I think Mr. Fogleman will also agree that I have always contended that they were separate offenses and were not entitled to be tried together.

> Prosecutor: I agree with that.

> Defense Counsel: I am just saying, your Honor, that it is one thing to talk about trying somebody on something. It is another to file it against him and proceed. I think the law holds us more accountable to what we file than what we say we are going to file. The fact is, the armed robbery information was not filed until today, the day of trial.

> The Court: Let me ask you this: You were aware that the aggravated robbery charge was there, is that correct?

> Defense Counsel: I was not aware. I obviously wasn't aware it had been filed because it hadn't been filed, but I was aware they intended to [at] some point to proceed on an aggravated robbery, either included with this — To be quite honest with you, your Honor, I really wasn't aware until this morning that they intended to — Well, Mr. Fogleman and I discussed it on Friday, that he wanted to proceed on both offenses simultaneously, and I, you know, told him I didn't agree. And I was not aware of any filing.

> The Court: The thing that concerns me is, I feel that all the proof involved in the alleged aggravated robbery is going to be introduced in the murder case, and is relevant,

so it just seems to me it would be better for the defendant to get the whole ball of wax over with, but, if the defendant doesn't want to stand trial on the aggravated robbery, I am going to — It was filed this morning, and I think, technically, . . .

Defense Counsel: (Interposing) Has the jury been sworn?

The Court: Yeah, the jury has been sworn.

Prosecutor: Your Honor, I would point out that before the jury was sworn, the objection that it was just filed today was not made.

Defense Counsel: Was not known.

Prosecutor: And, your Honor, the reason that it wasn't know[n] is because everybody, and I am sure including Mr. Montgomery, assumed that it had already been filed because the warrants that were obtained — There was a capital murder warrant and an aggravated robbery warrant obtained, and that's what he was extradited on.

The Court: Of course, I recall last week Mr. Montgomery at some point in the discussions whether or not the death penalty was going to be asked for by the State, that he was attempting to get the State to try just the aggravated robbery. I recall that.

I tell you what I am going to do, maybe it is grounds to give you something to go off on, I am not going to change my ruling. I am going to let it be tried on both things.

What is evident from this discussion, first, is the trial court was ambivalent about its ruling. Secondly, the defense counsel argued a pivotal point: "[T]he law holds us more accountable to what we file than what we say we are going to file." I agree. Moreover, the defense counsel was arguing up to the end that the robbery charge, if and when it was filed, should not be tried with the murder charge. He could easily have believed, since the robbery charge had not been filed before the trial date, that the prosecutor was either 1) not going to file it or 2) going to file it at a later time and try the charge separately.

Essential due process requires sufficient notice of the precise criminal charges brought and an adequate opportunity to prepare. That is one reason the state constitution requires that a formal indictment or information be filed. Ark. Const. art. 2 § 8; Ark. Const. amend. 21, § 1.

By statute a prosecuting attorney cannot amend an indictment so as to change the nature of the crime charged. *See* Ark. Code Ann. § 16-85-407 (1987). We have held on this point that a change in the nature of a charge in the absence of notice to the defendant is impermissible. *Harmon* v. *State*, 277 Ark. 265, 641 S.W.2d 21 (1982). In *Harmon* the defendant was accused of capital felony murder with kidnapping as the underlying felony. On the day of the trial, the prosecutor amended the information to add robbery as an alternate felony. The defendant was found guilty and sentenced to death. After discussing the amended charge, the court held that the nature of the charge was undoubtedly changed by the addition of robbery and that the change was not permissible absent notice to the defendant. This court then concluded: "It is hardly even arguable that a person can fairly be sentenced to death upon a charge that was not made until the morning of trial, leaving no possibility for thorough preparation of a defense upon both the facts and the law." 277 Ark. at 270, 641 S.W.2d at 24.

We have emphasized in a subsequent case that the amendment of a capital murder charge to include first degree murder was improper because the two crimes were of a different nature, requiring proof of different elements. *Bell* v. *State*, 296 Ark. 458, 757 S.W.2d 937 (1988) (affirmed because the defendant failed to preserve the argument for appeal). We have further said that we will allow amendments to an information only where the nature of the crime alleged has not changed and the accused is unable to show prejudice. *Allen* v. *State*, 296 Ark. 33, 751 S.W.2d 347 (1988). And we have underscored the fact that when amendments to a charge are made, the defendant must be given notice and adequate time for preparation. *See Abernathy* v. *State*, 278 Ark. 250, 644 S.W.2d 590 (1983).

In the case before us the appellant's information was not amended, but he was charged with an entirely new felony — aggravated robbery — on the day of the trial. Filing a new charge

at such a late date is even more serious in my judgment than amending an existing charge. The second robbery charge was separate and apart from the underlying robbery which accompanied the murder and which occurred at a different location. The prejudice to the appellant was, therefore, real and palpable for two primary reasons: 1) aggravated robbery has different elements of proof than capital felony murder; and 2) a new robbery charge was cumulative to the murder charge and doubtless implanted in the jury's mind that the appellant was on a criminal spree on the night in question.

Not knowing *with certainty* whether the client will be charged with a second felony until the date of the trial places the defense counsel under a horrendous burden. The majority wears blinders when it says no prejudice resulted. A fifty year sentence, standing alone, evidences prejudice enough.

The defense counsel announced he was ready for trial and then immediately moved for a continuance. This was following objections made on the new aggravated robbery charge, the absence of sufficient black males on the jury panel, and the appearance of the appellant in front of the jury panel in shackles. The record reflects that the defense counsel did not know the new charge had been filed until after the jury had been sworn. He objected to the trial of the second charge and asked that his objection be considered a continuing one. Within minutes he asked for a two week continuance. The context of his motion supports the conclusion that the motion was tied to the new charge as well as to the composition of the jury panel and the shackles.

Under these circumstances the defense counsel stated valid grounds for a severance, and he preserved his record for appeal. The new aggravated robbery charge should not have been submitted to the jury. I would reverse that conviction.

NEWBERN, J., joins