Michael Anthony BLACK *v.* STATE of Arkansas

CR 90-241                                814 S.W.2d 905

Supreme Court of Arkansas
Opinion delivered September 9, 1991

*Henry & Mooney*, by: *Wayne Mooney*, for appellant.

*Winston Bryant*, Att'y Gen., *Jeff Vining*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant appeals from his conviction for first degree murder and sentence of life imprisonment. His sole argument on appeal is that there is insufficient evidence to support the jury's verdict. Appellant's argument is without merit; therefore, we affirm.

To meet its burden of proof for a conviction of murder in the first degree, the state must prove that a person with a purpose of causing the death of another person, causes the death of any person. Ark. Code Ann. § 5-10-102(a)(2) (Supp. 1989). A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result. Ark. Code Ann. § 5-2-202(1) (1987).

In criminal cases, this court affirms where there is substantial evidence to support the verdict. *Lunon* v. *State*, 264 Ark. 188, 569 S.W.2d 663 (1978). Circumstantial evidence may be sufficient to sustain a conviction, *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988), and where circumstantial evidence alone is relied upon, it must indicate the accused's guilt and exclude every other reasonable hypothesis. *Murry* v. *State*, 276

Ark. 372, 635 S.W.2d 237 (1982). Whether circumstantial evidence excludes every other reasonable hypothesis is usually a question for the jury. *Id.* On appeal, however, this court views the evidence only to determine whether there is substantial evidence to support the verdict. *Ronning* v. *State*, 295 Ark. 228, 748 S.W.2d 633 (1988). Finally, in determining whether substantial evidence exists, the court reviews the evidence in the light most favorable to the appellee. *Pope* v. *State*, 262 Ark. 476, 557 S.W.2d 887 (1977).

On February 24, 1989, Earl Markway was found murdered in a field off Highway 63 in Trumann, Arkansas. He had been stabbed twenty-three times, and no money was found in his wallet. In reviewing the state's evidence introduced at trial, Markway, described as an older man dressed in western-style clothes, had been seen with the appellant at several bars on the night of the 23rd. Appellant, who is from Michigan, was in Trumann to marry his girlfriend, Missy Zech, and he had borrowed Missy's car, which was used to transport him and Markway that night. Appellant and Markway were first at a bar in Our Place from approximately 6:30 to 8:00 p.m., in West Main Tavern from about 8:30 to 9:30 p.m., and in Jim's Tavern between 9:00 and 10:00 p.m. Markway was buying beers for the appellant, and while at West Main Tavern, Markway complained because he was unable to obtain change for a $100.00 bill, so he paid with a $50.00 bill. After leaving Jim's Tavern, appellant and Markway were seen together at an Exxon station by a former girlfriend, Vicki Finney, and by Missy, who was out looking for her car. Appellant had just purchased a six-pack of Budweiser. He told Missy that he had to take Markway home and that he would return to his sister's (Anita Parker's) house where he was staying. Missy told appellant that she would follow him and Markway, but appellant lost them after leaving Exxon's premises.

Later that night, appellant showed up alone at another former girlfriend's (Carolyn Campbell's) house. Tammy, Carolyn's daughter, and two friends, Chris and Tony, were there and all agreed that appellant arrived at around 11:00 p.m. and went straight to the bathroom and ran water for a few minutes. Tammy and Chris both related they saw a knife in appellant's possession, and Tammy also said that she saw blood on appellant's hands when he came in. After a brief stay, appellant drove

to his sister's house, where he arrived at about 11:30 p.m. and was described as being in a bad mood. He had $180.00 in his pocket and also had a full bottle of crack. The amount of money was greater than what appellant told Missy he had when they left Michigan. After changing his jacket and T-shirt at his sister's, he then got a ride to a bar named Rudy Kazoo.

The State presented six witnesses who testified that the appellant told them that he had killed the old man. First, a bouncer at Rudy Kazoo's bar stated that he broke up a fight involving the appellant and another, and appellant said, "You don't want to f____ with me, I done killed one m_____ f_____." Vicki Finney stated that, on the night of the 23rd, she also saw appellant at Rudy Kazoo, and he told her that he had stabbed an old man. That same night, appellant asked Vicki for a ride to Michigan and gave her $100.00 for the trip. On the journey to Michigan, Vicki saw appellant take a knife wrapped in tissue out of the glove box and throw it in a ditch. She stated she saw something dark red on the knife and the blade was so bent, it would not fully close. In Michigan, Vicki said she overheard appellant tell his brother that he had stabbed the old man.

Another ex-girlfriend, Samantha Hilderbran, who resided in Michigan, related that she knew nothing about the homicide in Arkansas until appellant told her that he had killed an old man. Appellant told Samantha that he just intended to rob the old man, but the man drew a knife, and appellant then stabbed him. Appellant told Samantha that after the stabbing, he went to a girl's house, put his hands under his shirt and went to the bathroom to wash. After telling Samantha what happened, he threatened her against testifying against him by saying, "You think that man has been stabbed twenty-three times, yours would be uncountable."

Finally, appellant's sister, Anita Parker, and brother, Mark, testified that appellant told them he had stabbed the old man. These declarations arose after appellant returned to Arkansas from Michigan, and he got into an argument with Mark in front of Anita and her boyfriend, Gene Dees. Appellant was concerned that Mark had told the police that appellant had stabbed Markway, and in a fight with Mark, appellant repeatedly asked Mark how it felt to be a walking dead man and also said, "I'm

going to stab you long, deep and repeatedly like I did that old man." He told Anita and Gene that they would be next.

■■ The testimony of the foregoing witnesses strongly supports appellant's murder conviction. Appellant did little to discredit these witnesses' accounts except to say that they lied because they were angry with him for beating them up. He also pointed out that the witnesses never gave a full account of what he purportedly said about the victim until they were asked on a second or later time. Such inconsistencies in testimony are matters for the jury. *Ronning*, 295 Ark. 228, 748 S.W.2d 633. On appeal, this court does not weigh evidence on one side against the other, we simply determine whether the evidence in support of the verdict is substantial. *Id.*

Other evidence was also advanced by the state which either matched or was consistent with the testimony set out above. Without going into detail, the state showed traces of human blood were found on the jacket worn by appellant on the night of February 23 and on the steering wheel cover of the car he drove that night. Also, the code number on a crushed Budweiser beer can found near the victim's body matched the code numbers of four full beer cans found in the car driven by appellant. And finally, a partial footprint found in the area of the victim's body was made by a tennis shoe like the ones worn by the appellant.

■ Because the state's evidence so clearly reflects that the appellant committed the first degree murder crime with which he was charged, we affirm. Further, under Sup. Ct. R. 11(f), an examination has been made of all other rulings adverse to appellant, and none of them constitute prejudicial error.