Rodney Earl TOWNSEND and Tonda Ray Baker *v.*
STATE of Arkansas

CR 91-275                                        824 S.W.2d 821

Supreme Court of Arkansas
Opinion delivered February 10, 1992

*William R. Simpson, Jr.*, Public Defender, by: *Llewellyn J. Marczuk*, for appellants.

*Winston Bryant*, Att'y Gen., by: *Teena L. White*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellants, Rodney Earl Townsend and Tonda Ray Baker, were convicted of breaking or entering, for which they were sentenced to six years imprisonment, and theft of property, for which they were sentenced to fifteen years imprisonment. The sentences are to run consecutively. The case was certified to this court from the court of appeals, as it involves interpretation of our statute on breaking or entering.

Townsend and Baker raise four points of error on appeal: 1) the evidence was insufficient to support a conviction for either appellant; 2) the trial court erred in requiring Townsend to wear leg irons in the presence of the jury; 3) the trial court erred in denying appellants' proffered AMCI definition of "occupiable structure;" and 4) the trial court erred in denying appellants'

motion for a mistrial. We find merit in appellants' second argument and reverse and remand for new trial.

We must first determine the appellants' sufficiency argument, even though we reverse on other grounds. *See Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984). We will also consider appellants' contentions concerning their proffered jury instruction, as the issue may arise on retrial.

### SUFFICIENCY OF THE EVIDENCE

■ Townsend and Baker made timely motions for directed verdict, both at the close of the State's case and at the end of their own case-in-chief. They argue the evidence was insufficient to support the convictions and that our breaking or entering statute does not specifically cover the breaking or entering of a fence, as defined under that statute's use of the word, "structure." We disagree with both contentions.

Ark. Code Ann. § 5-39-202(a) (1987) states:

> A person commits the offense of breaking or entering if for the purpose of committing a theft or felony he enters or breaks into any building, *structure*, vehicle, vault, safe, cash register, money vending machine, product dispenser, money depository, safety deposit box, coin telephone, coin box, or other similar container, apparatus, or equipment.

(Emphasis added.) Our criminal code does not define the term "structure," it only provides the specifics of the term "occupiable structure," which is included in the greater offense of burglary. *See* Ark. Code Ann. § 5-39-201 (1987). Black's Law Dictionary (5th Ed. 1979) defines "structure" as "any construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner." That same authority defines "fence" as "a hedge, *structure*, or partition, erected for the purpose of inclosing a piece of land. . . ." (Emphasis added.) In light of these definitions and our statutory definition of breaking or entering, which broadly includes anything from buildings to coin boxes, we have no hesitancy in holding that a fence comes within the meaning of the word "structure", as that term is used in the statute.

As to the evidence, itself, we find ample support in the record

to uphold both convictions.

■ The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict. Substantial evidence must be forceful enough to compel a conclusion one way or another beyond suspicion and conjecture. On review, it is only necessary to ascertain that evidence which is most favorable to the appellee and, if there is substantial evidence to support the verdict, the finding must be affirmed. *Gillie* v. *State*, 305 Ark. 296, 808 S.W.2d 320 (1991).

Around midnight, on August 18, 1990, Mr. Howard Dale was awakened by the barking of his German Shepherds and went to his front porch where he observed a white Chevrolet pickup truck stop in front of his house on Colonel Glenn Road. Mr. Dale saw two black males emerge from the truck; one of them tall and wearing a red shirt, and the other short, wearing a brown or green shirt. The truck then left. The two men crossed the street and walked south along a fence surrounding Aimco Wholesale. Mr. Dale observed the fence shaking and, in a few minutes, saw the men enter the fence and go onto the Aimco property. He then observed the men pulling a trailer loaded with two all-terrain vehicles through a hole in the fence. After they pulled the trailer through the fence, the men walked along the outside of the fence and crossed the street. Mr. Dale was in his backyard at this time, observing the parties through bushes. Mr. Dale testified that while the parties were standing there, a deputy's car came by and the men crept into the ditch until the deputy passed. A minute or two later, the white truck came back and picked them up. Mr. Dale dialed 911 and reported a break-in when the men first entered the fence.

Pulaski County Deputy Sheriff Mike Kesterson testified he drove by Aimco Wholesale at approximately 12:40 a.m. He saw a black male wearing a red shirt and shorts standing on the side of the road, dusting his hands. He came within three feet of the man, as he passed by. Continuing on, Deputy Kesterson saw a white truck parked in a farmer's supply store lot (which is in the area near Aimco) with the engine running. The driver of the truck, a black male, saw the police car, turned his headlights on, and fell in behind Deputy Kesterson at the stop sign. The officer turned west and the truck turned and continued east. Deputy Kesterson was

running low on fuel so he radioed the police department to convey his "suspicions," but was told that another unit was "headed that way."

After refueling his car, Deputy Kesterson returned to Aimco Wholesale, whereupon police officers were holding three men in their squad cars. Deputy Kesterson identified Baker as the man he saw standing by the ditch and another man, Michael Raglin, as the driver of the truck.

Officer Robert Lusk testified that he responded to a call about 12:55 a.m., regarding a burglary in progress at Aimco Wholesale. Based on the information he received, Officer Lusk followed a white pickup truck travelling east on Colonel Glenn Road and, a few blocks later, pulled the truck over. The driver got out of the truck and identified himself as Michael Raglin. The two passengers identified themselves as appellants, Townsend and Baker. Baker was wearing a red shirt and shorts and Townsend was wearing a brown t-shirt.

The owner of Aimco Wholesale, Mr. Don Thompson, testified the property is completely enclosed by a fence and that when he left on the evening of August 17, the gates were closed and locked.

At trial, Baker and Michael Raglin denied the charges and testified Raglin and Townsend were driving Baker to some apartments in the area, when they were pulled over by the police.

The credibility of witnesses lies within the province of the jury. *Prater* v. *State*, 307 Ark. 180, 820 S.W.2d 429 (1991). Furthermore, circumstantial evidence may be sufficient to sustain a conviction provided where circumstantial evidence alone is relied upon, it indicates the accused's guilt and excludes every other reasonable hypothesis. *Black* v. *State*, 306 Ark. 394, 814 S.W.2d 905 (1991).

We find the evidence here, though largely circumstantial, was sufficient to sustain the convictions.

### RESTRAINTS

The appellants next argue the trial court erred in requiring Townsend to wear leg restraints in the presence of the jury. We agree, and reverse on this basis.

Prior to trial, the bailiff of the court sated he had heard, secondhand, from one of the deputies, that Townsend stated he would flee if given the opportunity. The bailiff wished to place Townsend in leg irons. Townsend's attorney objected, stating Townsend was currently in the penitentiary on a parole violation stemming from a prior burglary conviction, a non-violent offense, and that Townsend had shown no dangerous propensities. Earlier, Townsend had been allowed to walk down the hallway, unrestrained, without incident.

The trial court overruled the objection, stating it was not willing to take the risk, and that "we always live in danger of some inmate getting a female hostage. We'd just be stymied because we couldn't do anything." The trial court stated another option would be to place six or seven police officers around the courtroom, which would be even more obtrusive. The trial court further denied Townsend's attorney's request that the courtroom be cleared before Townsend was brought in wearing the restraints or, in the alternative, that Townsend not be restrained until the jury left on break, following voir dire. The trial court conceded that it had made such an allowance in the past, but refused to do so here. The trial court did offer to instruct the jury to disregard the restraints for purposes of determining guilt or innocence.

Townsend was escorted into the courtroom, through the front door and wearing the leg irons, after the jury was seated. A second request, that Townsend be allowed to walk back into the courtroom, unrestrained, prior to jury instructions and closing arguments, was also denied.

It is not prejudicial, *per se*, when the defendant is brought into a courtroom handcuffed (or, in this case, legcuffed), *Hill* v. *State*, 285 Ark. 77, 685 S.W.2d 495 (1985), and a trial court may take such reasonable steps as are necessary to maintain order. *See* Ark. R. Crim. P. 33.1. However, almost without exception, our prior decisions, in which we have upheld the use of restraints, have involved defendants charged with violent offenses or who have engaged in disruptive behavior, or attempted escape. *See e.g. Hill* v. *State*, *supra* (rape, aggravated robbery, and kidnapping); *Gillie* v. *State*, 305 Ark. 296, 808 S.W.2d 320 (1991) (capital felony murder); *Terry* v. *State*, 303 Ark. 270, 796 S.W.2d 332 (1990) (aggravated robbery); *Johnson* v. *State*, 261

Ark. 183, 546 S.W.2d 719 (1977) (escape). Furthermore, in a number of these cases, we noted that there was no evidence of anything but a brief, inadvertent sighting by only some of the jurors. *See Gillie* v. *State, supra; Williams* v. *State,* 304 Ark. 218, 800 S.W.2d 713 (1990); *Hill* v. *State, supra; Barksdale* v. *State,* 255 Ark. 272, 499 S.W.2d 851 (1973). Here, we can safely assume that Townsend's comings and goings in leg irons, through the front door of the courtroom and in full presence of the jury, did not go unnoticed.

Although there is sufficient circumstantial evidence to convict both Townsend and Baker, we should view the effect, if any, that the placing of Townsend in leg restraints, and parading him in front of the jury, might have had upon the jury's assessment of punishment for the two parties.

Under our criminal justice system, we call upon the jury to make findings of guilt and to assess punishment in the same proceeding, Ark. Code Ann. § 5-4-103 (1987), unless there is an exception which is cause for bifurcation. *See e.g.* Ark. Code Ann. § 5-4-602 (1987). In this instance, each appellant received the maximum sentence of six years for breaking or entering, and fifteen years, out of a range of five to twenty years, for theft of property. Although Townsend had a prior burglary conviction, this information was not disclosed and both appellants were regarded by the jury as first offenders. Obviously, the placing of Townsend in restraints, throughout the trial and for no compelling reason, within full view of the jury, had a telling effect on the jury in assessing punishment.

■ Our reasoning follows that in *Moore* v. *State,* 299 Ark. 532, 773 S.W.2d 834 (1989), where policemen who testified against the defendant were seated within the railing normally reserved for parties in closing arguments. We held that the resulting prejudice was clear in that the jury gave the maximum sentences for kidnapping and theft to a first offender. Similarly, the resulting prejudice, here, warrants a new trial for both appellants.

### JURY INSTRUCTION

Lastly, since it may arise on retrial, we address appellants' argument that the trial court erred in denying their proffered

AMCI definition of "occupiable structure." The assertion is meritless.

At trial, the appellants requested, and received, the giving of AMCI 2004, which defines the lesser included offense of criminal trespass. The instruction, which tracks the language of Ark. Code Ann. § 5-39-203(a) (1987), states that the jury must find the defendants "purposely entered or remained unlawfully upon the premises of another person." The instruction defines "premises" as "occupiable structures and any real property." The trial court gave the entire instruction, including the definitions of "premises" and "enter or remain unlawfully."

The appellants object, however, that the jury should have been instructed on the definition of "occupiable structure." The proffered definition read, in pertinent part: "a vehicle, building or other structure where any person lives or carries on a business or other calling where people assemble. . . ."

The trial court, the prosecutor, and the defense attorney all agreed that the definition was not applicable in this case; however, the appellants theorized that, if provided the definition, the jury would recognize its inapplication to the entering of a fence, and conclude that the only other applicable definition was "real property," thereby placing the offense within criminal trespass. (The appellants apparently hoped the jury would also apply the definition of "occupiable structure" to the undefined term, "structure" in breaking or entering.)

The cases cited by the appellants are irrelevant since they involve instances in which the trial court refused to give the lesser offense instruction. Here, the trial court instructed the jury on the lesser included offense of criminal trespass, but refused to give the clearly inapplicable definition of "occupiable structure." There is no error in refusing an instruction which may have misled or confused the jury. *Mosier* v. *State*, 285 Ark. 67, 684 S.W.2d 810 (1985). In sum, the trial court was correct in rejecting the proffered definition.

For the reasons enunciated in point II, the case is reversed and remanded for a new trial.

CORBIN and BROWN, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. I would affirm the convictions.

We tread on shaky ground when we second-guess a trial judge's decision on security matters. We have said as recently as 1990 that the use of restraints on a defendant was appropriate when dangerous conditions existed. *See Clemmons v. State*, 303 Ark. 265, 795 S.W.2d 927 (1990); *Terry v. State*, 303 Ark. 271, 796 S.W.2d 332 (1990). In both *Clemmons* and *Terry*, we weighed the prejudicial effect to the defendant occasioned by the use of restraints against the state's interest in safety, security, and order. In *Clemmons*, the defendant was placed in leg irons with a deputy sheriff seated directly behind him. This was due to the defendant's criminal record and the fact that he had injured his mother shortly before the trial. He had also threatened the judge and was found to have a hidden metal plate in his shoe. We held that the protective measures were warranted.

In *Terry*, the defendant was disruptive and ignored the judge's warning that he return to his seat. There was a scuffle in front of the jury, and the defendant was removed from the courtroom in handcuffs. He subsequently returned for trial and was convicted. Again, we upheld the use of the handcuffs under these circumstances.

The United States Supreme Court has recognized using restraints for unruly defendants where it is essential to maintain dignity, order, and decorum in the courtroom. *See Illinois v. Allen*, 397 U.S. 337 (1970). Our court has further held that it is not prejudicial *per se* for a defendant to be brought into the courtroom in handcuffs. *See Hill v. State*, 85 Ark. 77, 685 S.W.2d 495 (1985); *Johnson v. State*, 261 Ark. 183, 546 S.W.2d 719 (1977). In *Johnson*, for example, the handcuffs were used because the defendant was charged with escape from the penitentiary, and we affirmed their use. That is precisely the issue in the case before us.

Subsequent to *Illinois v. Allen, supra*, this court adopted Rule 33.1 of the Arkansas Rules of Criminal Procedure:

Defendants and witnesses shall not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain

order. If the trial judge orders such restraint, he shall enter into the record of the case the reasons therefor. Whenever physical restraint of a defendant or witness occurs in the presence of jurors trying the case, the judge shall upon request of the defendant or his attorney instruct the jury that such restraint is not to be considered in assessing the proof and determining the guilt.

The rule clearly leaves the issue of restraints to the discretion of the trial judge who is authorized to restrain as is reasonably necessary to maintain order in the courtroom.

In this case, Townsend was an inmate in the state penitentiary owing to a parole violation for a burglary conviction. Information was passed to the court's bailiff that the defendant would escape. This concerned the trial judge, as it should have, and he opted to place Townsend, who was dressed in civilian clothes, in leg irons. He further offered to instruct the jury that this should have no bearing on its assessment of proof or its determination of guilt, as the rule provides. Defense counsel rejected this.

The case is a close one, and as trial judge I might well have placed Townsend in leg irons after he was seated at the table and with the jury out of view. But in close cases regarding security matters in the courtroom, the trial judge is in a better position to evaluate the potential for danger and disruption than this court on appeal. Here, the danger of escape by a man already incarcerated in the state penitentiary existed with the collateral risk of hostage-taking. Plus, the trial judge was informed that he intended to escape. The judge had no other choice than to take some precautions. I do not believe that he overstepped his bounds.

CORBIN, J., joins.