Maurice CLEMMONS *v.* STATE of Arkansas

CR 90-137                                              795 S.W.2d 927

Supreme Court of Arkansas
Opinion delivered October 1, 1990

William R. Simpson, Jr., Public Defender, and *Llewellyn J. Marczuk*, Deputy Public Defender, by: *Richard Lewallen*, Deputy Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *John D. Harris*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. The appellant was convicted of burglary and theft of property in excess of $2,500.00 in value. He was sentenced to two thirty-year terms to be served consecutively. He makes two assignments of error. We affirm the judgment of conviction.

At trial leg irons were placed on the appellant and, in addition, the trial judge directed a uniformed sheriff deputy to sit inside the rail of the bar directly behind the appellant. The appellant does not question the use of leg irons but argues that placing the uniformed officer directly behind him was so inherently prejudicial that he was denied his right to a fair trial.

Central to the issue of a fair trial is the principle that "one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Taylor* v. *Kentucky*, 436 U.S. 478, 485 (1978). Uniformed officers and their seating arrangement can pose a real threat to the fairness of the factfinding process. *Holbrook* v. *Flynn*, 475 U.S. 560 (1986). Whenever a courtroom arrangement is challenged as inherently prejudicial the question is not whether the jurors expressed a consciousness of some prejudicial effect, but rather whether an unacceptable risk of prejudicial effect is presented. *Id.* at 570. This is a matter to be given close scrutiny by the reviewing court. *Id.* at 568.

Close scrutiny is not always fatal. There are times when the risk of prejudicial effect must be weighed against the State's interest in safety, security, and order. In *Holbrook* v. *Flynn*, 475 U.S. at 568, the opinion of the Court provides:

In *Illinois* v. *Allen*, 397 U.S. 337 (1970), the Court emphasized that a defendent may be prejudiced if he appears before the jury bound and gagged. "Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold." *Id.*, at 344. Yet the Court nonetheless observed that in certain extreme situations, "binding and gagging might possibly be the fairest and most reasonable way to handle" a particularly obstreperous and disruptive defendant. *Ibid.*

On the other hand, in *Estelle* v. *Williams*, 425 U.S. 501, 503-504 (1976), the Court noted that when an accused is forced to wear prison garb the jury might be prejudiced, and the wearing of such attire serves no useful State purpose.

Here, placing the appellant in leg irons and seating a uniformed deputy sheriff directly behind him was inherently prejudicial. Common sense immediately told each juror that, in the judge's mind at least, this defendant was an unusually dangerous man. Only in the rarest circumstances will the State's interest in security and order justify such action, and this is one of those rare circumstances.

The countervailing security factors in this case are as follows: The appellant had been convicted of three previous felonies, with each of the previous trials being before the same judge. Appellant had injured his mother immediately before the trial started and had threatened the trial judge. In addition, just before his omnibus hearing officers found a metal plate hidden in appellant's sock. In sum, the trial judge objectively knew that the appellant was dangerous, that he had threatened the judge and, on the occasion when he had the hidden metal plate, may have commenced a course of conduct designed to injure the judge or others. Thus, some extreme measures were justified for safety and security of the courtroom.

In order to determine which measure is to be employed, a trial judge must carefully weigh the various options. *Holbrook* v. *Flynn*, 475 U.S. at 569. For example, a non-uniformed bailiff outside the rail of the bar is preferable to a uniformed one. Placing

a bailiff, even in uniform, in the spectators area is less likely to cause prejudice than placing a uniformed guard next to the accused. Shackling an accused with leg irons and handcuffs and removing all throwable items from the counsel table could, in some cases, be preferable to placing a uniformed guard behind the accused. However, in this case, the trial judge stated that he was worried about the safety of the defense counsel and the deputy prosecuting attorney, as well as the jury. All were close to the accused. Defense counsel tacitly recognized the danger as he stated:

> I don't have any problem with the leg irons. And, for the record, he is in street clothes. So, I appreciate that. But, if the guard could just sit there, he's a large man, almost as big as I am, and it restricts his movement with the leg irons on him.

The probable prejudice to the accused was not impermissible, even when strict scrutiny is applied, because of the real danger presented by appellant, and the lack of meaningful alternatives. Accordingly, we find no error in the trial court's ruling.

Appellant's next assignment is much easier to decide. He contends that the State did not prove by substantial evidence that the property stolen had a value of $2,500.00 or more. The argument is wholly without merit.

The victim of the burglary, a state trooper, testified that some of his property had been stolen and some of it had been damaged by the burglar. He testified that his insurance company paid him $8,597.06 for both the stolen and damaged property. Appellant did not object to the testimony as hearsay. We have long held that hearsay evidence admitted without objection may constitute substantial evidence to support a conviction. *Bishop* v. *State*, 294 Ark. 303, 742 S.W.2d 911 (1988); *Murray* v. *State*, 275 Ark. 46, 628 S.W.2d 549 (1982); *Arkansas State Highway Comm'n* v. *Bradford*, 252 Ark. 1037, 482 S.W.2d 107 (1972); and *McWilliams* v. *R. & T. Transport, Inc.*, 245 Ark. 882, 435 S.W.2d 98 (1968), citing older cases. The appellant cites a Court of Appeals case, *Robinson* v. *State*, 10 Ark. App. 423, 664 S.W.2d 890 (1984), which provides "testimony based on conclusions or hearsay is not substantial evidence." The Robinson case,

*id.*, is overruled to the extent it conflicts with our cases.

■ However, even considering the hearsay as substantial evidence, the jury would still have to speculate as to which part of the $8,597.06 in value constituted stolen property and which constituted damaged property. The answer was supplied on redirect examination when the owner, the trooper, testified that the stolen VCRs and television set amounted to more than $2,500.00 in value.

Affirmed.