Angel Chaves FLORES *a/k/a* Andres Garcia Rivera *v.*
STATE of Arkansas

CR 01-787 85 S.W.3d 896

Supreme Court of Arkansas
Opinion delivered October 3, 2002

[Petition for rehearing denied November 7, 2002.]

*W. Gary Kennan*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Jeffrey A. Weber*, Ass't Att'y Gen., for appellee.

W H. "Dub" Arnold, Chief Justice. Angel Chaves Flores appeals the trial court's denial of his motion for new trial alleging ineffective assistance of counsel. Flores was arrested and charged with murder in the second degree of his wife Lucila Flores and battery in the second degree of Nicolas Reyes. An amended felony information was filed that accused Flores with the crimes of murder in the first degree and battery in the second degree. Flores asserts three errors by trial counsel that he alleges required the trial court to find he was entitled to relief under Rule 37. More particularly, Flores asserts ineffective assistance of counsel in that: 1) trial counsel's performance was deficient in that he was not functioning as the counsel guaranteed by the Sixth Amendment as evidenced by his acquiescing to Flores being tried to a jury while attired in distinctive jail clothing; 2) trial counsel's performance was deficient in that he was not functioning as the counsel guaranteed by the Sixth Amendment as evidenced by his acquiescing to Flores being tried to a jury while physically restrained in leg irons; and, 3) trial counsel's performance was deficient in that he abdicated his duty as counsel as guaranteed by the Sixth Amendment thus failing to subject the State's case to an adversarial testing and thereby violating Flores's right to a fair trial. We find reversible error and remand this case for a new trial.

*Facts*

On June 22, 2000, the police were called to the Floreses' home after a 911 call to report a domestic disturbance. When the officers arrived, they were met at the door by two small children. The officers could see Flores in the kitchen and as he approached them, they noticed blood on his clothing. One of the officers entered the house and found the victim, Lucila Flores, who was still alive, lying motionless in a bedroom, and there were blood-

soaked tissues on the floor. The officer also observed that the phone cord in the room had been cut.

At the hospital, the victim told the treating physician that Flores had beaten her. She had a severely damaged liver and injuries on her buttocks, right side, and back. Additionally, there was evidence of strangulation. The amount of blood that the victim lost was too extensive to save her life, and her cause of death was multiple blunt-force injuries.

At the arraignment in Washington County, Arkansas, Flores was represented by trial counsel. An amended felony information was filed accusing Flores with the crimes of murder in the first degree and battery in the second degree. Trial counsel continued to represent Flores during the jury trial.

During voir dire of the jury panel and during the entire jury trial Flores was dressed in Washington County, Arkansas, jail clothing, which consisted of a black-and-white striped pullover shirt and black-and-white striped trousers. Trial counsel did not file a pretrial motion requesting Flores to appear at trial in civilian clothing. Upon the jury panel viewing Flores so dressed, trial counsel did not move to allow Flores to change into civilian clothing at any time during the trial. Trial counsel did not object to Flores's appearance in jail clothing at any time during the trial, nor did he move to allow Flores to change into civilian clothing at any time, although Flores's civilian clothing was brought to the courthouse. Trial counsel did not move for a mistrial, nor did he move for the trial judge to admonish or instruct the jury regarding the clothing.

During voir dire of the jury and during the entire jury trial Flores was restrained in leg irons. Flores was called as a witness in the jury trial and walked from the defense table to the witness box so dressed in Washington County jail clothing and leg iron restraints in full view of the jury. Trial counsel did not file any pretrial motions requesting Flores to appear without restraints. Trial counsel did not object to Flores's appearance before the jury so restrained. Trial counsel did not move for a mistrial, nor did he move for the trial judge to admonish the jury regarding the

restraints. There was no ruling by the trial judge in the record as to the reason for the leg restraints.

There were no pretrial motions made by trial counsel, either orally or written. The State made two pretrial motions: one, motion for disclosure by the defendant of blood, saliva, and hair samples; and two, motion for discovery. There is nothing in the record regarding trial counsel responding to the State's motion for discovery.

During the trial, the State called eighteen witnesses. Flores was the only witness called on behalf of the defense. Trial counsel waived the opening statement. Trial counsel failed to make one objection in regard to any trial error, thus waiving any trial error.

Flores, admittedly enraged by having discovered the victim having sexual relations with another man, also admitted to slapping the victim, pulling her hair, and choking her. He admitted to hitting her at least seven times, and had previously threatened to kill her. Moreover, the victim's blood was found on the jeans Flores was wearing when the police arrived at his house. Finally, he told the jury that the victim might have caused the injuries herself.

Roberto Mere was called as a witness on behalf of the State. Mere testified that he worked for a women's shelter. He testified that Lucila Flores, the victim, told him of a history of abuse by her husband, Angel Flores. He further testified that Lucila Flores told him that she was beaten by her husband the day before, and that Flores had threatened to kill her on four or five occasions, once using a knife. Mere testified without any objection, and there is no record of trial counsel, at any time, moving to attempt to restrict this testimony.

After one day of trial the jury returned a verdict of guilty of murder in the first degree and set the punishment at the maximum of life in the Department of Correction. Flores was also found guilty of battery in the second degree for which the jury recommended eighteen months. The trial judge followed the recommendation of the jury and sentenced Flores to life and eighteen months to run consecutively.

Flores filed a motion for new trial alleging ineffective assistance of counsel, and requested a hearing on the motion. The trial judge denied Flores's motion in his order, and again in his amended order. This is a direct appeal of that denial of Flores's motion for new trial wherein Flores alleged ineffective assistance of counsel.

### Ineffective assistance of counsel

■ Flores was unable to follow the traditional route of direct appeal seeking redress for trial errors other than postconviction relief under Rule 37 of Arkansas Rules of Criminal Procedure. Trial counsel failed to file any pretrial motions, failed to make any trial motions, failed to object to any evidence presented at trial. Trial counsel's inaction waived all possible issues, constitutional or procedural, to be raised on appeal. The failure to interpose an objection or raise an issue in a motion prevents the issue from being raised for the first time on appeal. Objections must be made at trial in order to preserve them for appellate review errors of constitutional dimensions. *Clark v. State,* 264 Ark. 630, .575 S.W.2d 622 (1978).

■ Here, there were no trial errors preserved in this case. However, this Court has ruled that it will address Rule 37 relief on direct appeal if it was first raised during trial or in a motion for new trial and if the facts and circumstances were fully developed either during trial or during other hearings conducted by the trial court. *Chavis v. State,* 328 Ark. 251. 942 S.W.2d 853 (1997). Flores raised such issues in his motion for new trial alleging ineffective assistance of counsel; therefore, this court can consider Flores's appeal.

■ *Strickland v. Washington,* 466 U.S. 668 (1984), sets out an appellant's burden when claiming ineffective assistance of counsel. Appellant must demonstrate two components: first, appellant must show that trial counsel's performance was deficient; and second, appellant must show that the deficient performance prejudiced the defense. *Strickland, supra.* The first component requires a showing that trial counsel's errors were so serious that counsel was not functioning as the "counsel" guaranteed the

appellant by the Sixth Amendment. *Strickland, supra.* Trial counsel's performance must fall below an objective standard of reasonableness. *Strickland, supra.* The second component requires a showing that trial counsel's errors were so serious as to deprive the defendant of a fair trial. *Strickland, supra.* The errors must have actually had an adverse effect on the defense. *Strickland, supra.*

Unless appellant makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. Actual ineffectiveness claims alleging deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice. *United States v. Cronic,* 466 U.S. 648 (1984). However, prejudice to appellant may be presumed in certain situations. *Cronic, supra.*

This Court has held many times that it will not reverse the trial court's decision granting or denying postconviction relief unless it is clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Reynolds v. State,*341 Ark. 387, 3 S.W.3d 331 (2000). There is a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance, and an appellant has the burden of overcoming this presumption by identifying specific acts or omissions of trial counsel, which, when viewed from counsel's perspective at the time of the trial, could not have been the result of reasonable professional judgment. *Noel v. State,* 342 Ark. 35, 26 S.W.3d 123 (2000); *Norman v. State,* 339 Ark. 54, 2 S.W.3d 772 (1999), (citing *Wainwright v. State,* 307 Ark. 569, 823 S.W.2d 449 (1992)). Matters of trial tactics and strategy are not grounds for postconviction relief. *Vickers v. State,* 320 Ark. 437, 898 S.W.2d 26 (1973). However, all strategic decisions must still be supported by reasonable professional judgment. *Wicoff v. State,* 321 Ark. 97, 900 S.W.2d 187 (1995). It has also been held that a court considering a claim of ineffective assistance of counsel must view it through the perspective of the totality of the evidence put before the jury. *Matthews v. State,* 333 Ark. 701, 970 S.W.2d 289 (1998). The presumption can be overcome by demonstrating that

there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, *i.e.*, that the decision reached would have been different absent the errors. *Carter v. Armontrout*, 929 F.2d 1294 (1991). The trial court's decision to deny postconviction relief will not be reversed unless it was clearly erroneous or clearly against the preponderance of the evidence. *Carter, supra*.

## Jail clothing

At trial, Flores appeared with his trial counsel before a panel of petit jurors from which a jury was to be selected. A jury was chosen from the panel after voir dire. Flores was dressed in Washington County, Arkansas, jail clothing and shackled in leg irons. This clothing consisted of a black-and-white striped pullover shirt and black-and-white striped trousers, which is distinctive, identifiable jail clothing. This fact was contained in the trial judge's order and amended order.

Flores was required by the trial judge literally to stand before the jury during the trial court's voir dire, and the trial judge asked trial counsel to ask Flores to stand and face the jury panel. Later in the trial, Flores was identified by two witnesses, Mary Rodriguez and Officer Timothy Franklin, by the jail clothes he was wearing. Flores also testified while wearing jail clothing and while restrained in leg irons.

Trial counsel testified at the hearing on the motion for a new trial regarding Flores being clothed in jail garb. The trial counsel testified that he informed the bailiff that there were civilian clothes for Flores to change into, but trial counsel did not inform the trial court of this fact. The trial counsel further testified that he did not object to Flores being tried before the jury in jail clothing. The trial counsel went on to testify that he failed to file any motions before the trial to have Flores appear without jail clothing, but he thought the bailiff would help Flores change from the jail clothing to civilian attire. Trial counsel testified that Flores's brother, Marteen, had brought civilian clothing to the courthouse for Flores. Trial counsel did state that he did not want to make matters worse for Flores, since the jury had already seen him. Trial

counsel also stated that he did not request an admonishment from the trial judge to the jury.

The record is clear that there was no objection made; there was no motion for continuance to call a new jury panel; there was no request for an admonishment to the jury; nor a request for an instruction regarding Flores's appearance in jail clothing. The trial court in its amended order ruled that "Petitioner's counsel did not object to Petitioner's appearance in jail clothing or formally request that he change into civilian clothing, which clothing had been made available by Petitioner's brother."

 The rule in Arkansas is that the accused may not be forced to trial in prison garb absent a waiver. *Box v. State,* 348 Ark. 116, 71 S.W.3d 552 (2002). *Box* is the most recent case holding a defendant cannot be forced to trial in distinctive prison clothing. There cannot be any doubt that appellant has a right to appear in civilian clothing. *Miller v. State,* 249 Ark. 3, 457 S.W.2d 848 (1970). In *Miller,* this court adopted the rule that absent a waiver the accused should not be forced to trial in prison garb. *Miller, supra.* This was and remains consistent with Article 2, Section 8, of the Arkansas Constitution. *Box, supra.*

 When someone is tried in prison garb, his or her right to a fair trial is placed in serious jeopardy. *Box, supra.* In *Clemmons v. State,* 303 Ark. 265, 795 S.W.2d 927 (1990), this court stated that central to the issue of a fair trial is the principle that one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial. *Box, supra.*

The *Box* court stated:

> When someone appears in prison garb, the decision of the jury may well be based upon his or her prior conviction or status as someone held in custody. In Estelle, supra, the U.S. Supreme Court noted that when an accused is forced to wear prison garb, the jury might be prejudiced, and that the wearing of such attire serves no useful State purpose. *Clemmons, supra.* This is because once the jury sees the defendant in clothing implying he is a

criminal, they may assume he is, and the jury will be biased. The danger in this case is greater than where a prisoner is seen in county-jail clothing. Here, Box appeared in the white uniform of an Arkansas Department of Correction inmate, which showed he was a convicted and incarcerated felon. It might be tempting to enter into argument about whether an average venire member would know the difference in prisoner clothing between that worn by a county inmate and that worn in prison, but such an argument begs the question and discounts the importance of the concern at issue, that of a fair trial. Someone who comes into court in Arkansas in a prison uniform may well be recognized as a sentenced convicted felon, and that is the danger. There is nothing to be gained by trying someone in prison garb. Here, the motivation was to accommodate the jury and save time.

*Box v. State,* 348 Ark. 116, 71 S.W.3d 552 (2002). The *Box* case deals with prison garb and not jail clothing. However, this is not the distinction this court is facing; rather, it is trial counsel's performance regarding such attire.

Here, there is no doubt that trial counsel failed to object to the violation of his client's constitutional right, which, in turn, surrendered one of Flores's fundamental constitutional rights. This could have been easily prevented had trial counsel made a pretrial motion to allow Flores to appear before the jury in civilian clothing and free of restraints. Further, trial counsel testified that it was not a trial tactic or strategy.

Rule 37 procedure requires that trial counsel's performance be scrutinized in the light of *Strickland v. Washington,* 466 U.S. 668 (1984). The failure of trial counsel to make a pretrial motion, the failure of trial counsel to object to Flores appearing before the jury at his trial, and the failure of trial counsel to move for a continuance and require a new jury regarding Flores appearing in civilian clothing did amount to deficient performance of trial counsel under the first prong of the *Strickland* standard. Trial counsel's performance, or lack thereof, indeed "fell below an objective standard of reasonableness." *Strickland, supra.*

Flores also meets the prejudice prong of the *Strickland* standard. There is a reasonable probability that, but for

trial counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland, supra.* A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Lasiter v. State,* 290 Ark. 96, 717 S.W.2d 198 (1986) (citing *Mason v. State,* 289 Ark. 299, 712 S.W.2d 275 (1986)). Here, there is reasonable probability that the outcome of the trial would have been different, because Flores was convicted of first-degree murder rather than second-degree murder or manslaughter. Therefore, the denial of Flores's motion for new trial alleging ineffective assistance of counsel was reversible error and required a new trial.

### Leg restraints

 Flores appeared before the jury panel from which the jury was selected, and during the entire jury trial restrained in leg shackles. The trial court's order ruled "[T]hat Petitioner appeared before the jury in recognizable jail clothes and leg shackles." The trial court in its amended order ruled "[T]hat Petitioner appeared with leg irons and shackles."

Arkansas Rule of Criminal Procedure 33.4, *Custody and restraint of defendants and witnesses,* states:

> Defendants and witnesses shall not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order. If the trial judge orders such restraint, he shall enter into the record of the case the reasons therefor. Whenever physical restraint of a defendant or witness occurs in the presence of jurors trying the case, the judge shall upon request of the defendant or his attorney instruct the jury that such restraint is not to be considered in assessing the proof and determining guilt.

Ark. R. Crim. P. 33.4. Arkansas law is clear that defendants shall not be subjected to restraint while in court. There are, however, exceptions. The trial judge must find that the restraints are necessary to maintain order. *Illinois v. Allen,* 397 U.S. 337 (1970). In that case, the United States Supreme Court held that where it is essential to maintain dignity, order, and decorum in the courtroom, restraints may be used. *Illinois, supra.*

Here, there were no pretrial motions by trial counsel requesting Flores appear at the trial without restraints, there were no objections to the restraints, nor were there any motions for continuance to select a new jury panel. The trial judge did not find such restraint as being reasonably necessary to maintain order. There is no order in the record of a reason or reasons for Flores being restrained during the trial. There was no admonishment to or instruction to the jury that such restraint is not to be considered in assessing the proof and determining guilt. Trial counsel did not request in any manner for the leg restraints to be removed.

The State, at the hearing on the motion for new trial, produced two Washington County Deputies. One said that Flores became angry once, threw his food, and injured his foot. The other testified that the head jailor had heard from a cell mate that Flores said that "This is the day." The witness did not know what the statement meant, but assumed that Flores was going to try something. This testimony was not in the trial record, and there was no finding by the trial court as to why Flores should be restrained. However, the trial judge did say "[T]hat Petitioner may have been a safety and flight risk on the date of the jury trial," and "[T]hat Petitioner was considered a potential flight risk on the date of the jury trial" in his order.

In *Clemmons*, this court ruled that it was inherently prejudicial where the appellant appeared in leg irons and a uniformed officer was seated directly behind him. *Clemmons v. State*, 303 Ark. 265, 795 S.W.2d 927 (1990). There the defendant had threatened the trial judge, had injured his mother just before the trial, had three previous felony convictions, and on a previous court appearance, had hidden an object that could be used as a weapon. The court found that common sense immediately told each juror that, in the judge's mind at least, this defendant was an unusually dangerous man. *Clemmons, supra*. Only in the rarest circumstances will the state's interest in security and order justify such actions. *Clemmons, supra*. In *Clemmons*, the trial judge held a hearing and ruled specifically on the issue of restraints and security. *Clemmons, supra*.

Here, Flores had no record of prior criminal history, had not caused any previous disruptions in court, and there was no evidence of an attempted escape. Further, there was no ruling by the trial judge because trial counsel did nothing to bring such issues to the trial court's attention; therefore, trial counsel fails the first prong under the *Strickland* standard. Further, trial counsel allowing Flores to be placed before a jury in the black-and-white jail uniform and leg restraints was inherently prejudicial; therefore, Flores was deprived of a fair trail, and the denial of his motion for new trial alleging ineffective assistance of counsel is reversible error.

*Trial counsel failed to subject the State's case to adversarial testing*

Trial counsel's abdication of his duties as counsel for Flores is demonstrated by his many errors both pretrial and during the trial. However, this court does not recognize cumulative error. *Huddleston v. State*, 339 Ark. 266, 5 S.W.3d 46 (1999). Further, conclusory allegations of deficient conduct are insufficient to warrant relief. *Lee v. State*, 343 Ark. 702, 38 S.W.3d 334 (2001). Nevertheless, in this case, there are separate errors by trial counsel that do entitle Flores to relief.

In addition to the issues discussed above, trial counsel failed to provide competent representation. Trial counsel testified at the hearing on the motion for new trial stating, "I had been retained to negotiate a plea and based on my discussions with him at the jail I was trying to follow through on that and commence dialogue that could get a plea bargain under discussion." Trial counsel's only real strategy was to negotiate a plea bargain. Instead of deferring to other counsel, trial counsel continued representing Flores when it appeared there would be no plea bargain.

Further, trial counsel had a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Strickland, supra*. However, "when the appellant shows that defense counsel failed to exercise

the customary skills and diligence that a reasonably competent attorney would exhibit under similar circumstances, that presumption must fail." *Starr v. Lockhart,* 32 F.3d 1280 (8th Cir. 1994). Here, trial counsel neither investigated the law nor the facts pertaining to Flores's case. Trial counsel did not use reasonable professional judgment.

The following proof was adduced at the motion hearing regarding trial counsel's investigation of the facts: trial counsel visited with Flores at least five times; the longest time period trial counsel visited with Flores was one hour and forty-five minutes; trial counsel did not obtain a history of Flores other than where Flores was employed at the time of his arrest; trial counsel did not discuss, or at least at any length, about Flores extreme emotional distress from coming home and finding his wife, the victim, having sexual relations with another man; trial counsel failed to attempt to interview any of the State's witnesses, except the officer in charge and that was to ask him to assist him in locating the paramour, Nicolas Reyes; trial counsel did not read the entire file that was provided to him by the State, and he testified that "I didn't read every line, there would be phone calls, dispatches, things of that nature. You would glanced over them"; and trial counsel did not go to the scene of the incident.

Further, trial counsel testified that he refreshed his memory of first- and second-degree murder by reading the statutes, but he failed to look at manslaughter because for purposes of plea discussions, the State was not responding to second-degree murder. Additionally, Trial counsel offered no manslaughter instruction to the trial court. Trial counsel also testified that to some degree he familiarized himself with the Arkansas Rules of Evidence, and he looked over the Arkansas Rules of Criminal Procedure. However, trial counsel did not file a motion for discovery, nor a Brady motion seeking exculpatory evidence in the State's possession. Trial counsel failed to file any suppression motions seeking to suppress the two statements of Flores, nor did he file a suppression motion seeking to suppress certain evidence seized at the residence. Trial counsel failed to file a motion in limine seeking to suppress the hearsay testimony of Robert Mere and the testimony of Mary Rodriguez.

At trial, trial counsel did not make an opening statement, and at the end of the State's case, the trial judge gave him an opportunity to make an opening statement and again he waived the opening statement. Trial counsel failed to object once during the trial, thus allowing certain objectionable evidence to be introduced. Trial counsel did not call any witnesses, except Flores during the guilt phase, and trial counsel failed to call any witnesses during the penalty phase. Finally, trial counsel waived his closing argument in the penalty phase.

▮ From these facts, it is obvious that trial counsel did very little in the way of investigating the facts or the law. He abandoned Flores's best interests. Trial counsel has a duty to investigate all reasonable lines of defense, or make reasonable determinations that such investigation is not necessary. *Strickland, supra.* Both prongs of the *Strickland* standard are met here. Trial counsel's performance was deficient and fell below an objective standard of reasonableness, and trial counsel's errors were so serious that Flores was deprived of a fair trial.

In conclusion, we hold that the trial court erred in denying Flores motion for new trial alleging ineffective assistance of counsel. Flores met the *Strickland* requirements on each of the three bases discussed above.

## *Rule 4-3(h)*

This court is to review all error prejudicial to Flores in that Flores received a life sentence. Here there are no rulings adverse to Flores as there were no objections, rulings, or requests made by Flores. There was a ruling granting the State's motion for disclosure by the defendant of blood, saliva, and hair samples. That motion is the only motion by either party wherein the trial court ruled adversely to Flores. However, reversible error was found in that Flores received ineffective assistance of counsel.

Reversed and remanded for a new trial.