STATE of Arkansas *v.* Roger Dale BARRETT

CR 06-1490                                                263 S.W.3d 542

Supreme Court of Arkansas
Opinion delivered September 27, 2007

*Mike Beebe*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., and *Kent G. Holt*, Ass't Att'y Gen., for appellant.

*Joel O. Huggins*, for appellee.

J IM GUNTER, Justice. Appellee Roger Dale Barrett was convicted of the capital murder of Eunice "Yogi" Bradley and received a sentence of life imprisonment without the possibility of parole in the Arkansas Department of Correction. We affirmed the conviction in *Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003). Subsequently, Barrett filed a petition for postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure (2007). After a Rule 37 hearing, the circuit court ruled that Barrett was entitled to postconviction relief. The State appeals from the circuit court's rulings. We affirm.

A recitation of the facts is provided in our prior opinion. *See Barrett, supra*. Following a four-day jury trial during which Barrett was convicted of capital murder, the circuit court entered a judgment and commitment order on September 21, 2001, and an amended order was filed on December 17, 2001. On December 12, 2003, Barrett filed a petition for postconviction relief in which Appellee made the following allegations of error: (1) that trial counsel, Johnny E. Gross, was ineffective in failing to formulate any kind of trial strategy; (2) that trial counsel was ineffective because he failed to discuss with Barrett his right to testify; (3) that trial counsel was ineffective because he refused to communicate with the prosecuting attorney in an effort to negotiate a fair plea

agreement; (4) that trial counsel was ineffective because of his failure to interview witnesses; (5) that trial counsel was ineffective in failing to communicate with Barrett regarding any type of trial strategy, tactics, or defenses; (6) that trial counsel was ineffective in failing to discuss with Barrett the potential petit jurors in Barrett's case; (7) that trial counsel was ineffective and "misled" Barrett by telling him that the Benton County Public Defender's Office failed to do "a good job"; (8) that trial counsel was ineffective because of his failure to go to the scene with Barrett; (9) that trial counsel was ineffective and worked under a conflict of interest because his office advised Barrett's wife, Nola Barrett, a possible suspect, to plead the Fifth Amendment; (10) that trial counsel was ineffective because he never prepared a mitigation case for sentencing purposes; and (11) that trial counsel was ineffective in his failure to advise Barrett of the State's plea offer. The State filed a response on October 18, 2004.

A two-day evidentiary hearing was held on Barrett's Rule 37 petition on February 8 and February 10, 2006. In an order dated December 18, 2006, the circuit court made the following rulings: (1) granting a new trial on Barrett's first claim that trial counsel failed to formulate any kind of trial strategy and did not use reasonable professional judgment; (2) granting a new trial on Barrett's second claim that trial counsel failed to advise, counsel, and communicate with Barrett his right to testify; (3) denying Barrett's third claim that he was prejudiced by trial counsel's failure to pursue a plea agreement, because the State did offer a reasonable plea; (4) denying Barrett's fourth claim that his sentence would not have been lessened had the jury heard the testimony of witnesses whom Barrett claimed trial counsel failed to interview; (5) denying Barrett's fifth claim that trial counsel failed to communicate, because Barrett did not demonstrate that there would be a different result; (6) denying Barrett's sixth claim regarding trial counsel's selection of the jury; (7) granting a new trial based upon Barrett's allegation that trial counsel solicited his case away from his public defender by "badmouthing" the public defender and misleading Barrett; (8) denying Barrett's eighth claim regarding trial counsel's alleged failure to visit the crime scene; (9) granting new trial on Barrett's ninth claim that trial counsel's performance was significantly affected by his conflicting interests with Nola Barrett; (10) denying Barrett's tenth claim that trial counsel's failure to prepare a mitigation case was ineffective because his lack of preparation

was not prejudicial to Barrett; and (11) granting Barrett a new trial on his eleventh claim for trial counsel's failure to communicate a plea offer.

On October 31, 2006, the State filed a notice of appeal from an order dated October 9, 2006. The State filed an amended notice of appeal on December 20, 2006. The State now seeks to appeal the December 18, 2006, order based upon Rule 2(a)(3) of the Arkansas Rules of Appellate Procedure–Civil (2006), or Rule 3(b) of the Arkansas Rules of Appellate Procedure–Criminal (2006).

As a threshold matter, we consider whether the State has properly brought its appeal pursuant to Ark. R. App. P.–Crim. 3 (2007). Recently, in *State v. Wilmoth*, 369 Ark. 346, 255 S.W.3d 419 (2007), we stated:

> As this court has frequently observed, there is a significant and inherent difference between appeals brought by criminal defendants and those brought on behalf of the State. The former is a matter of right, whereas the latter is not derived from the Constitution, nor is it a matter of right, but is granted pursuant to Rule 3. *State v. Boyette*, 362 Ark. 27, 207 S.W.3d 488 (2005); *State v. Pruitt*, 347 Ark. 355, 64 S.W.3d 255 (2002); *State v. McCormack*, 343 Ark. 285, 34 S.W.3d 735 (2000). When this court addresses an appeal by the State, we first determine whether the correct and uniform administration of the criminal law requires our review. *See* Rule 3(c); *State v. Markham*, 359 Ark. 126, 194 S.W.3d 765 (2004); *State v. Johnson*, 317 Ark. 226, 876 S.W.2d 577 (1994). As a matter of practice, this court has only taken appeals which are narrow in scope and involve the interpretation of the law. *State v. Pittman*, 360 Ark. 273, 200 S.W.3d 893 (2005); *State v. Warren*, 345 Ark. 508, 49 S.W.3d 103 (2001).
>
> However, we have recently noted that, when an appeal involves neither a direct nor an interlocutory appeal following a prosecution, but is rather a civil appeal arising from a collateral proceeding, the appeal is civil in nature, and the State is not required to satisfy Rule 3. *See State v. Burnett*, 368 Ark. 625, 249 S.W.3d 141 (2007). Because the instant case arises from a collateral proceeding, we conclude, as we did in *Burnett, supra*, that the State need not satisfy Rule 3.

*Wilmoth, supra.* Therefore, because the State is not required to satisfy Rule 3 in the instant appeal, we then will proceed to the merits of the State's arguments.

For its sole point on appeal, the State argues that the circuit court clearly erred by concluding that Barrett received ineffective assistance of counsel from his trial counsel, John Gross, and by granting Barrett's Rule 37 petition, thereby entitling him to a new trial. Specifically, the State contends that the circuit court erred in granting a new trial based upon the following ineffective-assistance claims: (1) trial strategy, (2) Barrett's right to testify, (3) Gross's solicitation of Barrett's case, (4) conflict of interest, (5) and the State's plea offer.

In response, Barrett argues that the circuit court properly concluded that he received ineffective assistance of counsel. Citing *Leasure v. State*, 254 Ark. 961, 497 S.W.2d 1 (1973), Barrett asserts that the circuit court's order should be affirmed because the same circuit judge tried the case, entered the order, and presided over the Rule 37 hearing, thereby giving the court the "best possible vantage point from which to evaluate the effectiveness of counsel's assistance to appellant from a review of files and records." *Id.* at 963, 497 S.W.2d at 2.

We do not reverse a denial of postconviction relief unless the trial court's findings are clearly erroneous. *Greene v. State*, 356 Ark. 59, 146 S.W.3d 871 (2004). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Flores v. State*, 350 Ark. 198, 85 S.W.3d 896 (2002) (per curiam). In making a determination on a claim of ineffectiveness of counsel, the totality of the evidence before the fact-finder must be considered. *State v. Franklin*, 351 Ark. 131, 89 S.W.3d 865 (2002). The resolution of credibility issues is within the province of the trial court. *Myers v. State*, 333 Ark. 706, 972 S.W.2d 227 (1998).

We must determine whether counsel's performance was ineffective under the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Jackson v. State*, 352 Ark. 359, 105 S.W.3d 352 (2003). In *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007), we discussed this standard in detail:

> Under the standard set forth in *Strickland, supra*, to determine ineffective assistance of counsel, the petitioner must show first that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as

the "counsel" guaranteed the petitioner by the Sixth Amendment. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Cook v. State*, 361 Ark. 91, 204 S.W.3d 532 (2005).

Second, the petitioner must show that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. The petitioner must show there is a reasonable probability that, but for counsel's errors, the fact finder would have had a reasonable doubt respecting guilt, *i.e.*, the decision reached would have been different absent the errors. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *See Cothren v. State*, 344 Ark. 697, 42 S.W.3d 543 (2001). The language, "the outcome of the trial," refers not only to the finding of guilt or innocence, but to possible prejudice in the sentencing. *Lasiter v. State*, 290 Ark. 96, 717 S.W.2d 198 (1986). In making a determination of ineffective assistance of counsel, the totality of the evidence must be considered. *Id.* Furthermore, trial strategy is not a basis for postconviction relief. *Wooten v. State*, 352 Ark. 241, 91 S.W.3d 63 (2002).

*Id.*, 369 Ark. at 108, 251 S.W.3d at 292-93.

Unless appellant makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Flores v. State*, 350 Ark. 198, 85 S.W.3d 896 (2002). Actual ineffectiveness claims alleging deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice. *United States v. Cronic*, 466 U.S. 648 (1984).

Further, the burden is on appellant to provide facts to support his claims of prejudice. *Nelson v. State*, 344 Ark. 407, 39 S.W.3d 791 (2001) (per curiam). The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Burton v. State*, 367 Ark. 109, 238 S.W.3d 111 (2006). The petitioner must show that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt and

that the decision reached would have been different absent the errors. *Id.* Further, conclusory statements cannot be the basis of postconviction relief. *Jackson v. State*, 352 Ark. 359, 105 S.W.3d 352 (2003) (per curiam).

With this *Strickland* test in mind, we turn to the State's specific arguments. For its first point, the State argues that the circuit court erred in granting a new trial based upon Barrett's ineffective-assistance claim that his trial counsel failed to formulate a trial strategy. The State contends that Gross correctly refused to embrace an "accident theory," which the State maintains was fraught with evidentiary discrepancies. In response, Barrett argues that Gross failed to formulate a trial strategy, other than "put[ting] the State to its burden," and that the circuit court correctly granted a new trial on this basis.

We have stated that matters of trial strategy are not within the purview of Rule 37. *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000) (per curiam). Counsel is allowed great leeway in making strategic and tactical decisions. Those decisions are a matter of professional judgment, and matters of trial tactics and strategy are not grounds for postconviction relief on the basis of ineffective assistance of counsel. *Id.*

Nonetheless, such strategic decisions must still be supported by reasonable professional judgment, pursuant to the standards set forth in *Strickland*. *Id.* Judicial review of counsel's performance must be highly deferential, and a fair assessment of counsel's performance under *Strickland* requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from counsel's perspective at the time. *Echols v. State*, 354 Ark. 530, 554, 127 S.W.3d 486, 501 (2003).

For example, in *Wicoff v. State*, 321 Ark. 97, 900 S.W.2d 187 (1995), the appellant had been convicted of first-degree sexual abuse and incest. The victims, who testified against him during the trial, were his eleven-year-old and ten-year-old stepdaughters. Wicoff filed a petition for postconviction relief in which he alleged that his counsel was ineffective for failing to file a motion under the rape-shield statute to explore the prior sexual conduct of the victims, and for failing to introduce the testimony of the victims' grandmother. According to Wicoff, the evidence of prior sexual abuse by other parties was relevant to explain how the children could have testified in such graphic detail about the alleged

incident with Wicoff. The testimony of the grandmother was relevant because she would have testified that one of the victims told her that the allegations against Wicoff were fabricated.

In *Wicoff*, we applied the prejudice prong of the test for ineffective assistance of counsel in *Strickland*, and determined that there was a reasonable probability that the outcome of the trial would have been different if Wicoff's attorney had attacked the victims' credibility with the evidence of prior sexual conduct and with the grandmother's testimony. Consequently, we concluded that despite the strategic reasons Wicoff's attorney articulated for not introducing the evidence, his decision did not exhibit the reasonable professional judgment required by *Strickland*. *See also Russell v. State*, 302 Ark. 274, 789 S.W.2d 720 (1990). Our decision in *Wicoff* indicates that, despite the deference that must be shown to the judgment and strategic decisions of counsel, there are instances where the resulting prejudice to the accused is so great that even a strategic decision can constitute ineffective assistance of counsel.

With this precedent in mind, we turn to the present case. Here, the circuit court found that Gross did not use his "reasonable professional judgment" by failing to develop any trial strategy. The circuit court reasoned that Gross failed to conduct "any voir dire on the presumption of innocence or the different mental states required for the various degrees of murder," noting that Gross's voir dire was "excruciating to observe." Further, the circuit court noted in its order that Gross, whom the circuit court described as "ill-equipped to handle a case of this nature," had never tried a murder case, and that when asked by the circuit court if he needed assistance from "more experienced, seasoned trial attorneys," Gross turned down the circuit court's offer.

With regard to the issue of trial strategy, the circuit court ruled in its order:

> During the hearing, Gross was questioned about his "strategy" — to present no defense and merely argue that the State had not met its burden of proof and there was no real evidence linking Barrett to the crime. Gross explained his decision to try the case this way and his explanation made absolutely no sense to this court. In this court's opinion, tactical and strategic decisions are decisions based on the specific facts of a given case, but a lack of tactical and strategic decisions are not "strategies," they are negligence and ignorance. Without a structured and coherent theory of defense, Gross's

reaction and response to the State's evidence, including objections, failure to object, and cross-examination, worked to his client's prejudice.

■ Based upon the *Strickland* test, we agree with the circuit court's rulings on this issue. Under the first prong of the *Strickland* test, Gross's performance was deficient for the following reasons. First, it is apparent from the record that Gross never developed a trial strategy at all. As the circuit court stated in Barrett's Rule 37 hearing, "[w]hat we are talking about here is much more egregious." Second, Gross failed to *voir dire* the jury on the elements of the State's case, the burden of proof, the presumption of innocence, or the mental states required for various degrees of murder. Third, Gross did not present a discernible defense. Specifically, Gross did not present any evidence or witnesses to testify to Barrett's intent or mental state, and he failed to present Barrett's defense or specific intent in closing argument.

■ Further, under the second prong of the *Strickland* test, there was a reasonable probability that the outcome of the trial would have been different had Gross's performance not been deficient. *Wicoff, supra.* Here, Gross's performance as counsel, when viewed in its totality, prejudiced his client because he failed not only to present a substantive defense, but also failed to distinguish the various mental states of murder to the jury. Had the accidental theory been presented to and believed by the jury, the jury could not have convicted Barrett of capital murder, and Barrett would have received a lesser sentence. With regard to the jury's belief of the accidental theory, the circuit court wrote at one point in the order: "[Barrett] had no prior felonies. He was sympathetic. He was believable." Thus, there was a reasonable probability that the jury would have had reasonable doubt as to Barrett's capital-murder charge. *See Williams, supra.*

Therefore, based upon our well-established standard of review, we hold that the circuit court was not clearly erroneous by articulating its firm convictions in its rulings on this issue. Accordingly, we affirm the circuit court's grant of new trial based upon Barrett's first claim of ineffectiveness regarding Gross's lack of trial strategy. Because we affirm the circuit court's grant of new trial on the first point, we will not delve into the remaining points on appeal.

Affirmed.