LARRY D. VAUGHT, Judge
James Edward Crippen appeals the Crawford County Circuit Court's order denying his petition for postconviction relief filed pursuant to Arkansas Rule of Criminal Procedure 37.1. On appeal, Crippen argues that his trial counsel was ineffective in failing to (1) object to the introduction of a drug-task-force officer's testimony and an Arkansas State Crime Laboratory report and (2) call the crime-lab chemist as a witness at trial. We affirm.
On September 22, 2014, Crippen was charged by felony information as a habitual offender with simultaneous possession of drugs and firearms, trafficking methamphetamine, possession of drug paraphernalia, theft by receiving, fleeing, and possession of a firearm by certain persons. At trial, drug-task-force officer Lanny Reese testified that during a search incident to Crippen's arrest, officers found a case containing "around seven ounces of suspected methamphetamine." Reese also testified that the package had some "big crystal rocks in there" and that it was extremely white.
During Reese's testimony, the State sought to introduce the crime-lab report that described the substance tested as a "clear crystalline substance" and concluded that the substance was 200.4 grams of pure methamphetamine. Counsel for Crippen stipulated to the admission of the report, stating on the record that it was a tactical decision.[1] Relevant to this appeal, the jury convicted Crippen of trafficking methamphetamine pursuant to Arkansas Code Annotated § 5-64-440(b)(1) (Repl.
*393 2016), which provides that a person engages in trafficking a controlled substance if he or she possesses, possesses with the purpose to deliver, delivers, or manufactures 200 grams or more of methamphetamine. For this conviction, Crippen was sentenced to twenty-five years' imprisonment.[2] Thereafter, Crippen's counsel filed a no-merit appeal and a motion to withdraw as counsel. On May 16, 2018, this court affirmed Crippen's convictions and granted his counsel's motion to withdraw. Crippen v. State , 2018 Ark. App. 315, 2018 WL 2228117.
Crippen then filed a timely petition for postconviction relief in the circuit court. In that petition, he raised three claims of ineffective assistance of counsel: (1) trial counsel was ineffective for failing to investigate and perform pretrial functions; (2) trial counsel was ineffective for failing to call the crime-lab chemist as a witness at trial; and (3) trial counsel was ineffective for failing to object to the testimony of Reese and to the introduction of the crime-lab report.
The circuit court held a hearing on Crippen's Rule 37 petition. Crippen and his trial counsel, David Dunagin, testified. At the conclusion of the hearing, the court denied Crippen's petition. An order denying the petition was entered on October 9, 2018. In the order, the court rejected Crippen's arguments that his trial counsel was ineffective for failing to conduct a pretrial investigation and for failing to call the crime-lab chemist as a witness at trial. The order did not address or rule on Crippen's claim that his trial counsel was ineffective for failing to object to Reese's testimony and to the introduction of the crime-lab report. This appeal followed.
When reviewing a circuit court's ruling on a Rule 37.1 petition, we will not reverse the circuit court's decision granting or denying postconviction relief unless it is clearly erroneous. Rayburn v. State , 2019 Ark. App. 79, at 2-3, 570 S.W.3d 516, 519. A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. Id. at 3, 570 S.W.3d at 519.
The benchmark question to be resolved in judging a claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Id. , 570 S.W.3d at 519. A Rule 37 petitioner's ineffective-assistance-of-counsel claims are analyzed under the two-prong standard set forth in Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires a petitioner to show that his or her counsel's representation was deficient, and he or she suffered prejudice as a result. "Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable." Rayburn , 2019 Ark. App. 79, at 3, 570 S.W.3d at 520 (citing State v. Barrett , 371 Ark. 91, 96, 263 S.W.3d 542, 546 (2007) ).
*394 Pursuant to Strickland and its two-prong standard, first a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. Id. , 570 S.W.3d at 520. A petitioner making an ineffective-assistance-of-counsel claim must show that his or her counsel's performance fell below an objective standard of reasonableness such that counsel committed errors so serious as to not be functioning as counsel at all. Id. , 570 S.W.3d at 520. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 4, 570 S.W.3d at 520. The burden is on the petitioner to overcome this presumption by identifying specific acts or omissions by counsel that could not have been the result of reasoned professional judgment. Id. , 570 S.W.3d at 520.
Second, the petitioner must show that, considering the totality of the evidence before the fact-finder, counsel's deficient performance so prejudiced petitioner's defense that he or she was deprived of a fair trial. Id. , 570 S.W.3d at 520. The petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. Id. , 570 S.W.3d at 520. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Id. , 570 S.W.3d at 520. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. Id. , 570 S.W.3d at 520. A petitioner bears the burden of providing sufficient facts to affirmatively support any claims of ineffective assistance of counsel. Id. , 570 S.W.3d at 520. Thus, conclusory statements, without more, cannot form the basis for postconviction relief. Id. at 4-5, 570 S.W.3d at 520.
Crippen raises two points on appeal. The first is that the circuit court clearly erred in finding that his trial counsel was not ineffective on the basis of Crippen's claim that he failed to object to the testimony of Reese and to the introduction of the crime-lab report because there were discrepancies in his testimony and in the report. Specifically, Crippen argues that Reese testified that officers found "around seven ounces"[3] of "extremely white" drugs, but the crime-lab report concluded that it was 200.4 grams of a "clear crystalline substance" that had been tested. Crippen argues that "[t]he marked difference in the description of the substance by the officer and the chemist leads ... to the conclusion that there is a significant possibility that the evidence tested was not the same as that taken by the officer." Crippen suggests that the evidence was tampered with (increased in weight), which allowed the State to overcharge him with trafficking.
We cannot reach the merits of Crippen's first point on appeal because it is not preserved for our review. As set forth above, Crippen's Rule 37 petition set forth three claims for relief, but the circuit court's order denying the petition addressed only two of them. The order did not address Crippen's claim that his trial counsel was ineffective for failing to object to Reese's testimony and the introduction of the crime-lab report.[4]
*395 In the postconviction context, when the circuit court provides written findings on at least one, but fewer than all, of the petitioner's claims, our supreme court has held that an appellant has an obligation to obtain a ruling on any omitted issues if they are to be considered on appeal. Cowan v. State , 2011 Ark. 537, at 3, 2011 WL 6275694 (citations omitted). If the order does not contain a ruling on an issue or issues, it is incumbent on the appellant to file a motion asking the court to address the omitted issues. Id. The requirement that an appellant obtain a ruling on all issues he or she wishes to raise on appeal is procedural, and all appellants, including those proceeding without counsel, are responsible for following procedural rules in perfecting an appeal. Id. Matters left unresolved are waived and may not be raised on appeal. Id. Because Crippen failed to get a ruling from the circuit court on his first point on appeal, it is not preserved.
Crippen's second point on appeal is that the circuit court clearly erred in finding that his trial counsel was not ineffective for failing to call the crime-lab chemist as a witness at trial, which he claims is a violation of his Sixth Amendment right to confront that witness. Again, he relies on the discrepancies in the description and weight of the drugs in the crime-lab report and in the testimony of Reese and contends that someone tampered with the evidence to overcharge him with drug trafficking. He argues the testimony of the chemist would have confirmed his theory.
Whether to call a witness is generally a matter of trial strategy that is outside the purview of Rule 37. Van Winkle v. State , 2016 Ark. 98, at 10, 486 S.W.3d 778, 786 (citing Nelson v. State , 344 Ark. 407, 412, 39 S.W.3d 791, 795 (2001) (per curiam)). Trial counsel must use his or her best judgment to determine which witnesses will be beneficial to the client. Nelson , 344 Ark. at 412, 39 S.W.3d at 795. When assessing an attorney's decision not to call a particular witness, it must be taken into account that the decision is largely a matter of professional judgment that experienced advocates could endlessly debate, and the fact that there was a witness or witnesses who could have offered testimony beneficial to the defense is not in itself proof of counsel's ineffectiveness. Id. , 39 S.W.3d at 795. Nonetheless, such strategic decisions must still be supported by reasonable professional judgment pursuant to the standards set forth in Strickland . Id. , 39 S.W.3d at 795. A bare allegation that there are witnesses who could have been called in the petitioner's behalf will not support a claim of ineffective assistance of counsel. Id. , 39 S.W.3d at 795. Decisions involving which witnesses to call to benefit a case lie purely within the realm of counsel's trial tactics. Id. at 412-13, 39 S.W.3d at 795.
Crippen has not sustained his burden of proving that his attorney's strategic decision not to call the crime-lab chemist to testify was professionally unreasonable or deficient. His attorney, Dunagin, who reported at the postconviction hearing that he had tried fifty drug cases and worked on 300 appeals, testified that it was his trial strategy not to call the chemist as a witness at trial because he believed her testimony would bolster the credibility of her findings that the methamphetamine weighed more than 200 grams, which would have benefited the State-not Crippen. Dunagin further testified that the "little bit" of discrepancy between Reese's weight and description of the methamphetamine and the weight and description in the crime-lab report "[did] not bother [him] at all." He testified that Reese is not *396 an expert in weighing[5] and describing methamphetamine-the chemist is. Dunagin stated: "There's nothing I could have asked her that would have helped make a difference in getting it below 200 grams." He said that the chemist would have testified to the information contained in her report and would not have changed it. Dunagin stated that he stipulated to the crime-lab report and did not call the chemist to testify because he did not want the State to be "waving this chemist in front of the jury four or five times that [the methamphetamine] was more than 200 grams." Dunagin added that he examined the chain-of-custody/tampering issue and concluded there was no merit to it. He testified that, in his opinion, the chemist would not testify that the drugs found by the officers and introduced at trial were not the same drugs she tested.
Dunagin further stated that a week before trial he advised Crippen of his trial strategy not to call the chemist to testify. Crippen admitted at the Rule 37 hearing that the State contacted Dunagin the week before trial to advise that the chemist would not be at trial. But Crippen denied that Dunagin advised him (Crippen) at that time that he (Dunagin) did not plan to call the chemist.[6] On this issue, the circuit court believed Dunagin, and the circuit court is in the best position to resolve any conflicts in testimony. Pardue v. State , 363 Ark. 567, 571, 215 S.W.3d 650, 655 (2005). The judge at a postconviction-relief hearing is not required to believe the testimony of any witness, particularly that of the accused. Id. , 215 S.W.3d at 655.
Finally, Crippen has failed to demonstrate that he suffered prejudice from Dunagin's failure to call the chemist as a witness at trial. In other words, he has failed to show that the chemist's testimony would have changed the outcome of the trial. The chemist did not testify at the postconviction hearing,[7] and Crippen did not proffer her testimony in any other form. Therefore, it is sheer speculation and conjecture to conclude that the chemist would have supported Crippen's evidence-tampering theory by testifying that the drugs found and described by Reese were not the same drugs she tested. A bare allegation that there are witnesses who could have been called in the petitioner's behalf will not support a claim of ineffective assistance of counsel. Nelson , 344 Ark. at 412, 39 S.W.3d at 795.
After a thorough review of the record, we hold that the circuit court's findings that Dunagin's decision not to call the chemist was a matter of trial strategy and not ineffective assistance of counsel are not clearly erroneous.
Affirmed.
Klappenbach and Whiteaker, JJ., agree.

Crippen's counsel also stated on the record that it was his tactical decision to not require the State to produce the chemist who had authored the report for trial because he did not want the chemist to emphasize the findings in the report to the jury.

Crippen was also convicted of possessing drug paraphernalia and fleeing, for which he was sentenced to five years' imprisonment and a $ 5,000 fine and six years' imprisonment, respectively. These terms of imprisonment, along with the twenty-five-year term for trafficking, were to run consecutively, for a total of thirty-six years' imprisonment. Crippen v. State , 2018 Ark. App. 315, at 1, 2018 WL 2228117. The circuit court dismissed the charges for simultaneous possession of drugs and firearms, possession of a firearm, and being a habitual offender. Id. The jury acquitted Crippen of the theft-by-receiving charge. Id.

There are 198.447 grams in seven ounces.

In his brief on appeal, Crippen concedes that the circuit court did not rule on his claim that his trial counsel was ineffective for failing to object to the introduction of the report: "The Judge ... never ruled on that issue one way or the other."

Dunagin testified that Reese likely used a five-dollar scale from Walmart to weigh the drugs.

Crippen argues on appeal that the stipulation to the admission of the crime-lab report and not to call the chemist to testify was improper because there is no order entered by the circuit court pursuant to Arkansas Rule of Criminal Procedure 20.4 setting forth the parties' agreement to stipulate to those things. However, this argument was not raised below, and there is no ruling on it by the circuit court; therefore, we cannot consider it on appeal.

After filing his postconviction petition, Crippen filed a pro se motion "demanding" the chemist who performed the drug testing be present at the Rule 37 hearing. At the postconviction hearing, the circuit court denied the motion. Crippen does not challenge that ruling on appeal.